(No. 13522.—Judgment affirmed.)

DANIEL LEWY, Defendant in Error, *vs.* THE STANDARD PLUNGER ELEVATOR COMPANY, Plaintiff in Error.

*Opinion filed February 15, 1921.*

1. APPEALS AND ERRORS—*Supreme Court cannot weigh evidence after Appellate Court has approved verdict in action at law.* Where the verdict of the jury in an action at law has been approved by the trial and Appellate Courts no question as to the weight of the evidence can be raised in the Supreme Court with reference to the trial court's action on the motion to direct a verdict, and as to any controverted question of fact the Supreme Court is bound by the judgment of the Appellate Court.

2. SAME—*party cannot take position in court of review inconsistent with position in the trial court.* A party cannot try a case on one theory in the trial court and on another theory in a court of review.

3. PRINCIPAL AND AGENT—*when salesman is entitled to commissions on contract to install elevators in court house—public policy.* It is not, of itself, illegal to negotiate a contract for the sale of goods or supplies to a public agency for public purposes, and a salesman who has, without unlawful influence, negotiated a contract between his company and county commissioners to install elevators in a court house is entitled to his commission even though the contract could not lawfully have been made had the bids of his company not met the provisions of the law for letting such contract to the lowest bidder..

4. SAME—*when evidence of salesman's prior earnings is admissible to prove damages for wrongful dismissal.* Where a salesman has been wrongfully dismissed from the employment of a company which is the successor of his former employer, who was engaged in the same business, evidence of the salesman's earnings while he was with the predecessor company is admissible to serve as a basis for the damages to be allowed in an action of assumpsit for the breach of the contract of agency.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. L. Mc-KINLEY, Judge, presiding.

JOHN A. BLOOMINGSTON, and ELLIS & LEWIS, for plaintiff in error.

ISAAC S. ROTHSCHILD, and SCHAFFNER & FRIEND, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error brought suit in the superior court of Cook county in an action of assumpsit to recover damages against plaintiff in error under a contract between the parties. A verdict of $7000 was found in his favor, upon which judgment was entered in the trial court. On appeal to the Appellate Court that judgment was affirmed, and the cause has been brought here by petition for *certiorari* for further review.

Defendant in error was employed by a predecessor company of plaintiff in error in 1912, and later by its receiver until August, 1914, when he entered the employ of plaintiff in error, which had just taken over the business, under a contract dated November 1, 1914. Some of the material provisions of the contract are, that the territory assigned to Lewy as salesman is the State of Illinois, with the right to solicit specific jobs from outside territory in certain cases; that his compensation shall be a commission of five per cent of the total contract price for the installation of the company's elevators on all contracts secured by him until the total aggregate of contracts during the fiscal year amounts to $100,000, and two and a half per cent of the contract price on the excess of $100,000. Under the contract defendant in error further agreed that "each year during the existence of the contract he will secure at least one hundred thousand ($100,000) in contracts for the installation of Standard Plunger Elevators. * * * The party of the second part must be instrumental in bringing the elevators sold by the party of the first part to the attention of the prospective customer and bring the parties together, with the result that a contract is agreed to and signed, otherwise party of the second part shall not be entitled to any com-

mission." Another clause provided that the "party of the first part agrees to advance to said party of the second part the sum of two hundred fifty ($250) a month, payable on the first day of each month during the term of this agreement, and to charge said sums advanced against the commissions earned by the said party of the second part." It was also provided that the agreement might be canceled and terminated by either party upon the failure of the other party to comply with any clause thereof and upon giving the other party thirty days' notice of the failure to comply, "otherwise it is to remain in full force and effect until the termination of the agreement as specified herein." Another clause of the contract stated that in case of termination of the agreement before the expiration thereof, "the party of the second part shall be entitled to a commission, as hereinbefore specified, upon any contract secured by the party of the first part in the territory covered by the agreement, provided, however, that the contract so secured is one on which the party of the second part has been working during the term of this agreement." The record and proof support the allegation that defendant in error entered the employ of plaintiff in error as provided in said contract, and tend to show that he complied with all of its provisions until February 12, 1916, when he was discharged by plaintiff in error.

The record shows that there were two jury trials. In the first defendant in error recovered a verdict of $7600, and on the second trial, which is being reviewed here, he recovered a judgment for $7000. The record shows that the principal matter in controversy on the hearing before the jury was whether, under the terms of the contract, the defendant in error was rightly discharged, or whether he was entitled to commissions on the contract for his services before he was discharged. The plaintiff in error, in the notice discharging defendant in error, stated specifically that he was discharged on the ground of not furnishing

$100,000 worth of contracts, in accordance with the terms of the contract.

Much evidence was taken on this hearing, especially with reference to the work of defendant in error in securing the installation of his company's elevators in the Hamilton county court house, in Ohio, it being urged by plaintiff in error that said contract was not obtained through the efforts and salesmanship of the defendant in error. Much of the evidence on this question is found in the record in numerous letters and telegrams passing between the defendant in error and the home office of the company; testimony as to many interviews of the parties and what was said and done by the president and other representatives of the company and by defendant in error; and of interviews with the Hamilton county authorities connected with the letting of the contract and the installation of the elevators in the court house. These were questions of fact all rightly submitted to the jury to be passed upon on the hearing in the trial court. The jury found the issues for the defendant in error, and the judgment entered on their verdict was sustained in the Appellate Court.

On review of the Appellate Court's judgment in this court in an action at law on a motion to direct a verdict we can only examine the record to see whether or not it contains evidence fairly tending to support the plaintiff's cause of action and whether the rules of law have been properly applied. The weight to be given to the evidence must be submitted to the jury, and when their finding of fact has been approved by the trial and Appellate Courts, no question of fact as to whether one witness' story is more reasonable or credible than another, whether the evidence is sufficient to support the verdict, or whether the weight or preponderance of the evidence is against the verdict of the jury, can be raised here. (*Reiter* v. *Standard Scale Co.* 237 Ill. 374.) If it is a question of fact where the testimony is controverted, as it is here, this court is

bound by the judgment of the Appellate Court. *Sturges & Burn Manf. Co.* v. *Great Western Smelting Co.* 248 Ill. 285; *Illinois Steel Co.* v. *Saylor,* 226 id. 283.

The chief controversy here is whether defendant in error is entitled to commissions on the elevators put in by said company in the Hamilton county court house. It seems incontrovertible that if defendant in error was entitled to commissions on the court house work when the provisions of the contract as to that work were complied with, his discharge was wrongful. If no error of law was made in the rulings on the trial, then the question as to whether he was entitled to those commissions was one entirely of fact found by the jury and approved by the Appellate Court, and we cannot in any way interfere with that finding of fact.

Counsel for plaintiff in error argue that under the law of Ohio for the erection of public buildings defendant in error could not earn a commission, as the Ohio statute provided that the contract must go to the lowest bidder, and the letting of the contract was therefore controlled by law instead of being subject to the discretion of the contractors or the commissioners. Counsel state in their brief on this point: "If the contract was required by law to be let to the lowest bidder, then any effort on the part of a salesman to procure a contract regardless of the law would be for an improper purpose and any contract to do so would be void. The contract in the case at bar would be unquestionably void in so far as it purported to pay a commission for influencing a commission or procuring a contract other than by the methods provided by the statutes." They also say: "We do not claim, as stated by the [Appellate] court, that the contract here is void because it provides for a compensation for securing a contract from public officials. One may in good faith deal with public officials and by legitimate solicitation procure such a contract. A contract, however, which has for its purpose the solicitation of a con-

tract which can only be obtained by making the lowest bid is one necessarily tending toward improper influence and is unenforceable." We cannot agree with the argument of counsel. There can be no question that a contract based upon an illegal or immoral consideration is unenforceable, and that a contract to perform services which would tend necessarily to improperly influence action as to public contracts or the administration of justice is also unenforceable. (*Tool Co.* v. *Norris,* 69 U. S. 45; *Goodrich* v. *Tenney,* 144 Ill. 422; *Crichfield* v. *Bermudez Asphalt Paving Co.* 174 id. 466.) But in our judgment it would be entirely consistent, not only with the contract here in question but with the law of Ohio, for a salesman of ability and skill to work to secure a contract for his company even though there was uncertainty between the time the bid was submitted and the time the bids were opened whether he had succeeded in making his company's bid the lowest and of such a character as to permit of its acceptance by the commissioners. We do not think there is any rule of law which makes it illegal to negotiate a contract for the sale of goods or supplies to a public agency for public purposes.

The distinction between personal influence used to secure public contracts and legitimate professional services performed in making public officials acquainted with the merits of merchandise to be sold is well pointed out in the case of *Trist* v. *Child,* 88 U. S. 441, and the same court, in passing on a similar question, cited with approval the doctrine laid down in the *Trist case,* in *Oscanyan* v. *Arms Co.* 103 U. S. 261, and said (p. 275): "It is legitimate to lay before the officers authorized to contract, all such information as may apprise them of the character and value of the articles offered and enable them to act for the best interests of the country, and for such services compensation may be had as for similar services with private parties, either upon a *quantum meruit,* or, where a sale is effected, by th ordinary brokerage commission. And here it may

be observed, in answer to some authorities cited, that the percentage allowed by established custom of commission merchants and brokers, though dependent upon sales made, is not regarded as contingent compensation in the obnoxious sense of that term, which has been so often the subject of animadversion by this court, as suggesting the use of sinister or corrupt means for accomplishing a desired end. They are the rates established by merchants for legitimate services in the regular course of business. But where, instead of placing before the officers of the government the information which should properly guide their judgments, personal influence is the means used to secure the sales and is allowed to prevail, the public good is lost sight of, unnecessary expenditures are incurred, and, generally, defective supplies are obtained, producing inefficiency in the public service." The same reasoning was used by that court in *Stanton* v. *Embry,* 93 U. S. 548, where it was said (p. 557) : "Professional services to prepare and advocate just claims for compensation are as legitimate as services rendered in court in arguing a cause to convice a court or jury that the claim presented, or the defense set up against a claim presented by the other party, ought to be allowed or rejected. Parties in such cases require advocates, and the legal profession must have a right to accept such employment and to receive compensation for their services. Nor can courts of justice adjudge such contracts illegal if they are free from any taint of fraud, misrepresentation or unfairness."

The reasoning of the court in *Tool Co.* v. *Norris, supra,* is much relied on by counsel for plaintiff in error in support of their position on the point being considered. In *Kansas City Paper House* v. *Foley,* 85 Kan. 678, the court had the reasoning in *Tool Co.* v. *Norris* under consideration, and stated on page 682 : "In that case, however, it was plainly shown that the services for which a recovery was sought consisted in bringing personal and political influence to bear upon the public officers charged with the

duty of letting a contract for the purchase of supplies for the government. The language quoted was obviously used with that fact in mind." In the *Foley case* the Supreme Court of Kansas also said with reference to the facts in that case (p. 681): "But there was also testimony that Foley was employed simply as an ordinary salesman because of his experience in using and buying paper and other material handled by the plaintiff, and that his efforts were in accordance with that employment and were confined to exhibiting samples and 'talking up' the goods and the responsibility of the house. If that was the case the contract was valid. * * * To give information regarding a proposed contract to one of several members of a board charged with the letting of it is a means of getting the information before the board and does not necessarily imply secrecy or concealment." We do not consider that the authorities cited by counsel for plaintiff in error support his argument on this question.

It appears that the commission claimed by defendant in error on the Hamilton county court house contract is precisely the same in amount as that provided for orders from private enterprises. It appeared there was opportunity for general contractors to secure the contract for the mechanical equipment for the entire court house, which would include the furnishing of elevators, in which case the elevators would be furnished under a sub-contract. There is no question but under the specifications in other respects the building commission reserved the right to pass upon the qualifications of the elevator manufacturers and to waive informalities, or to insist upon them and reject proposals. On this record it cannot be said there was not a legitimate field for the salesman to exercise his ingenuity and skill in procuring the contract for his company. There is no evidence in the record that tends to show that anyone was improperly influenced, but, on the contrary, we think the evidence shows there was no attempt to exercise improper

influence upon the public authorities of Hamilton county as to the letting of this contract. Under the Ohio statute a salesman can legitimately work to procure a contract of this kind. He could very well keep within the letter and spirit of the act even though his acitivities must be restricted to be within its requirements and so exercised that the bid of his company would meet the provisions of the law. We think, under the authorities already referred to, on this record the court rightly permitted the jury to pass on the question whether defendant in error was entitled to commissions for the contract for the Hamilton county court house elevators and that no rule of law was violated in allowing a recovery.

Plaintiff in error insists that the trial court erred in admitting evidence as to defendant in error's earnings in the years previous, when he was with the predecessor company and the receiver, preceding the re-organization under which this contract was made. This evidence was permitted to serve as a basis for the damages to be allowed for his wrongful dismissal under this contract. Counsel rely upon the reasoning in *Roth* v. *Spero,* 96 N. Y. Supp. 211. We think that case is fairly distinguishable on the facts from the one here under discussion, and that under the reasoning of this court in *Barnett* v. *Caldwell Furniture Co.* 277 Ill. 286, *Wakeman* v. *Wheeler,* 101 N. Y. 105, and *Wells* v. *National Life Ass'n,* 99 Fed. 222, the court did not err in admitting the evidence in question as to sales in the same identical business though carried on by different proprietors.

Plaintiff in error also insists that the trial court erred in allowing any damages, because the testimony offered by defendant in error tended to show that he himself had violated the contract before his discharge. We do not think plaintiff in error is in a position to raise this question. On the trial of the case counsel stated in open court, when a question was raised directly involving this subject: "I would like to say, to relieve counsel's mind on that and perhaps

save the court some trouble, that we are not going to attack anything he has done at all. We are going to claim he was a good employee." Again, in connection with the same discussion, counsel for plaintiff in error said: "I am not going to make any claim that he was not a good man." Plaintiff in error's argument in its brief on the question of defendant in error being rightly discharged because he himself violated the contract is entirely inconsistent with its position on the trial. It is a well settled rule of law that a person cannot try a case on one theory in the trial court and on another theory in the court of review. (*Butler* v. *Miller,* 208 Ill. 231; *Davis* v. *Illinois Collieries Co.* 232 id. 284; *Winnard* v. *Clinton,* 233 id. 320.) In this connection it may be noted that some of the objections as to the giving and refusing of instructions are fully answered by this same reasoning: that the arguments in support of mistakes as to instructions cannot be well raised in view of counsel's position in the trial court with reference to the discharge. We have examined the questions raised and are of the opinion that, taking all the instructions given, the jury were not in any way misled to the injury of plaintiff in error by the giving or refusing of instructions. Some of the matters urged as to refused instructions are obviated by the fact that the principles covered by such instructions were fully contained in other instructions given.

Other questions are raised on the record, but we have given them consideration and think that no prejudicial error was committed with reference to any of them. What we have said covers substantially all the material questions raised in the arguments. The case was twice tried and both juries rendered substantially the same verdict. Most of the material questions here under consideration were settled by the jury, approved by the trial and Appellate Courts and cannot be inquired into here.

We find no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*