(No. 19111.—

THE CHICAGO TITLE AND TRUST COMPANY, *vs.* GEORGIANA DE LASAUX *et al.*—(GEORGIANA DE LASAUX, Plaintiff in Error, *vs.* THE CHICAGO TITLE AND TRUST COMPANY *et al.* Defendants in Error.)

*Opinion filed October 19, 1929—Rehearing denied Dec. 4, 1929.*

HARRY W. STANDIDGE, for plaintiff in error.

SHERMAN C. SPITZER, and EDMUND J. REYNOLDS, for defendant in error the Chicago Title and Trust Company.

TYLER, DOTSON, GETER & LORICK, for defendant in error F. William Harsh, Jr.

Mr. COMMISSIONER PARTLOW reported this opinion:

The Chicago Title and Trust Company filed its bill of interpleader in the superior court of Cook county against Charles M. Whitehead, George Young, Blanche Woodward, Georgiana De Lasaux and F. W. Harsh, Jr., to determine the ownership of $1000 held by it. Answers were filed by the defendants and the cause was referred to a master to take the evidence and report his conclusions. The master found that the Chicago Title and Trust Company was en-

titled to $150 as its costs and charges and that $850 should be paid to Harsh as his commission for the sale of the real estate in question. Exceptions to the report were overruled, a decree was entered as recommended, an appeal was prosecuted to the Appellate Court for the First District by Mrs. De Lasaux, where the decree was affirmed, and the case is brought to this court by Mrs. De Lasaux upon a writ of *certiorari*.

The evidence shows that Georgiana De Lasaux was the owner of certain real estate in Chicago, which she placed in the hands of Blanche Woodward, her attorney in fact, for sale. On November 19, 1924, Mrs. De Lasaux and Edward De Lasaux, her husband, by Mrs. Woodward, their attorney in fact, entered into a written contract to sell the real estate to T. C. Windham for $36,000, of which $1000 was paid in cash as earnest money, $12,000 was to be paid when the transfer was completed, there was to be a first mortgage for $13,000 and a second mortgage for $10,000. The contract provided that if the purchaser failed to perform the contract at the time and in the manner specified, the earnest money should, at the option of the vendor, be retained as liquidated damages and the contract canceled; that the contract and earnest money should be held by the Chicago Title and Trust Company for the mutual benefit of the parties concerned; that it should be the duty of the trust company, in case the earnest money was forfeited, to apply it to the payment of any expenses incurred for the vendor and to pay the balance to the vendor as liquidated damages. It also provided that a broker's commission of three per cent of the sale price was to be paid to Harsh, and that the vendor was not to be liable for any commission unless the deal was closed in accordance with the terms of the contract. On November 20, 1924, the contract and the $1000 were delivered to the trust company, and a written agreement was entered into between Mrs. Woodward and Harsh which provided that the contract and money were to be delivered

and paid out only upon their joint order; that in case any suit or proceeding regarding the property was filed to which the trust company was a party, it should have a lien for all costs, attorney's fees and expenses and it should be reimbursed out of the deposit. The deal was closed and the purchase money paid to the vendor except the $1000, which remained with the trust company and on account of which this bill of interpleader was filed. Harsh brought suit in the municipal court of Chicago against Mrs. Woodward, the attorney in fact, claiming three per cent of the purchase price, or $1080, for his commission. He obtained a judgment by default against her and summoned the trust company as garnishee. Upon a hearing the garnishee was discharged. The vendor paid to Whitehead $250, which he claimed as part commission due him for the sale of the property, and he and Young claimed that more money was due them. The bill prayed that the defendants be enjoined from prosecuting against complainant any action at law or in equity with reference to the fund and that Harsh be enjoined from further prosecuting garnishee proceedings in the municipal court on said judgment.

The decree, after reciting the facts substantially as above set forth, found that the $1000 was paid by a check to Harsh, which he indorsed to the Chicago Title and Trust Company; that this amount was earnest money and was a part of the purchase price of the property, and at the time it was paid it was the property of Georgiana De Lasaux; that Harsh was present at the time the contract of sale was executed and knew all of the facts; that he procured the purchaser, the contract was signed solely through his efforts, and that he was entitled to a commission on the sale. It was decreed that the trust company was entitled to retain $150 as its expenses and costs; that Harsh was entitled to $850, and upon the payment of that amount to him the trust company was to be relieved from further liability as to the fund; that defendants be enjoined from prosecuting any

suit at law or in equity against the trust company in regard to the fund, from prosecuting against the trust company and Blanche Woodward the action in the municipal court brought by Harsh, and from instituting or prosecuting any writ of attachment, garnishment, writ of error or appeal from any judgment or order entered in said cause in the municipal court against the trust company and Mrs. Woodward.

Plaintiff in error, Georgiana De Lasaux, insists that the decree should be reversed because defendant in error Harsh, by bringing suit in the municipal court against Blanche Woodward, conclusively elected to hold her solely liable for the payment of the commission, and he cannot in this proceeding hold plaintiff in error for its payment. In support of this contention cases are cited which are not applicable to the facts here presented. The doctrine of election is based upon the assumption that two or more inconsistent and alternative remedies exist, and when a party selects one of these remedies he is precluded from prosecuting any other. (*Bradner Smith & Co.* v. *Williams,* 178 Ill. 420.) Harsh did not have two or more inconsistent remedies. He and one of his salesmen were the only witnesses who testified in this case, and their evidence was limited to what was done in making the sale. Most of the other facts were stipulated, consequently there is very little, if any, conflict in the evidence. The evidence is that Harsh made the sale and was entitled to the commission. At the time he made it he knew the plaintiff in error was the owner of the property and that Mrs. Woodward was her attorney in fact. There was no question of an undisclosed principal. Where an agent in making a contract discloses his agency and the name of his principal, or where the party dealing with the agent knows that the agent is acting as an agent in making the contract, the agent is not liable on the contract unless he agrees to become personally liable. (*Millikin* v. *Jones,* 77 Ill. 372; *Wheeler* v. *Reed,* 36 id. 81; *Chase*

v. *Debolt*, 2 Gilm. 371.) There is no evidence that Mrs. Woodward by her agreement or acts became personally liable for this commission. The rule that one having the choice of two inconsistent remedies is bound by his election and when he begins suit upon one remedy he is precluded from subsequently resorting to the other remedy, is not inconsistent with the practice of bringing a second and different action where it appears that the plaintiff never had a right of action as first brought and therefore could not have made an election. There is a difference between an election of remedies and a mistake of remedies. The law will not deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions. (*Garrett* v. *Farwell Co.* 199 Ill. 436.) Under the evidence Harsh secured the judgment against Mrs. Woodward because she did not appear in the municipal court and defend. He did not secure the judgment as the result of his election to prosecute one of two inconsistent remedies. He did not file the bill of interpleader and he became a party defendant thereto by no act of his. He did not elect to prosecute another remedy after he secured the judgment, but after he was made a party defendant in the interpleader he claimed in his answer that the balance of the money belonged to him. In 20 Corpus Juris, 42, it is said: "Where the plaintiff at law is made the defendant in equity in the suit by the defendant at law involving the same matter and becomes an actor therein, he is precluded from further prosecution of the action at law and cannot be deprived of the right to a decree in the equity suit on the ground that he had elected to sue at law." The decree cannot be reversed on the ground that Harsh, by an election to sue Mrs. Woodward, foreclosed his right to relief in this case.

Plaintiff in error insists that under the pleadings and evidence the Chicago Title and Trust Company incurred an independent liability towards plaintiff in error; that the trust company had no lawful right to bring her into a court

of equity to litigate the claim of Harsh against her; and that none of the essential elements necessary to give the court jurisdiction to grant the relief prayed appear either in the bill or in the evidence.

The equitable remedy of interpleader depends upon and requires the existence of the four following elements: First, the same thing, debt or duty must be claimed by both or all of the parties against whom the relief is demanded; second, all the adverse titles or claims must be dependent on or be derived from a common source; third, the person asking the relief must not have or claim any interest in the subject matter; fourth, he must have incurred no independent liability to either of the claimants—that is, he must stand perfectly indifferent between them, in the position, merely, of stakeholder. *Rauch* v. *Fort Dearborn Bank,* 223 Ill. 507; *Morrill* v. *Manhattan Life Ins. Co.* 183 id. 260; *Platte Valley Bank* v. *National Livestock Bank,* 155 id. 250.

The contract recited that Harsh was to be paid a commission of three per cent of the sale price and that plaintiff in error was not to be liable for a commission unless the deal was closed. These provisions fixed the amount of the commission to be paid, to whom it was to be paid and under what conditions it was to be paid. The deal was closed, therefore plaintiff in error was liable for the commission. The contract recited that the $1000 was to be held by the Chicago Title and Trust Company for the mutual benefit of the parties concerned. Harsh was the party to whom the commission was to be paid and was one of the parties concerned. When the money was paid to the trust company, the contract executed by Harsh and Blanche Woodward provided that the money was to be paid out only upon their joint order, and therefore the trust company held the money partly upon the order of Harsh. The bill set up all of these facts and alleged that each and all of the defendants were claiming the fund. Harsh filed a separate answer, in which he alleged that he was entitled to the fund and that the

other defendants had no claim upon it. The other four defendants joined in an answer, in which they claimed that the fund belonged to plaintiff in error. Plaintiff in error prayed that the $1000, after deducting the amount of the reasonable costs and charges of complainant, be paid to her. It is not alleged in her answer that the court was without jurisdiction to determine the issue between Harsh and plaintiff in error. A party cannot try a case on one theory in the trial court and on another theory in a court of review. (*Lewy* v. *Standard Elevator Co.* 296 Ill. 295; *Winnard* v. *Clinton*, 233 id. 320; *Davis* v. *Illinois Collieries Co.* 232 id. 284.) On the trial, under the pleadings and evidence, the sole question was whether Harsh procured the purchaser and was entitled to his commission. The undisputed evidence shows that he made the sale, that he was entitled to a commission, and the court had jurisdiction to determine the rights of the parties and who was entitled to the fund.

It is insisted by plaintiff in error that the injunction granted was broader than the prayer of the bill, and that it was granted without giving a bond, as provided in section 8 of chapter 69 of our statutes. The prayer of the bill was for specific relief. There was also a prayer for general relief. The provisions of the decree as to the injunction are a little broader than the prayer for specific relief, but under the prayer for general relief the decree cannot be reversed on the ground that the relief granted is broader than the specific prayer. Harsh is making no complaint as to the provisions of the injunction. He was the one primarily restrained. If he has no cause to complain we·see no reason why plaintiff in error should complain. Section 8 provides that before an injunction shall issue to enjoin a judgment the complainant shall give bond to the plaintiff therein, conditioned to pay the judgment and such damages as may be awarded against the complainant in case the injunction is dissolved. This section is only applicable where preliminary injunctions are issued and has no appli-

530

cation to permanent injunctions entered upon a final hearing, where there can be no motion to dissolve.

We find no reversible error, and the judgment of the Appellate Court will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*