Adolph M. Spitznass and Irvin Lang, Appellees, v. Lezern Saylor and Raymond Montgomery, Appellants.

Term No. 50–0–11.

Opinion filed February 2, 1951. Released for publication February 28, 1951.

S. S. DUHAMEL, of Springfield, for appellants; ARTHUR F. MELVIN, and GORDON FRANKLIN, both of Marion, of counsel.

POWLESS & WINTERS, of Marion, for appellees.

Mr. Presiding Justice Scheineman delivered the opinion of the court.

The appellants, Lezern Saylor and Raymond Montgomery, have perfected this appeal from an order of the circuit court of Williamson county, which found them in contempt of court, and assessed against each of them a fine of $25 and costs.

The contempt proceedings were ancillary to an injunction suit. The writ of injunction had been served upon these defendants, and the mandate here involved commanded them ''to refrain from entering into any secret, clandestine or illegal contract.'' There has been no motion to dissolve the injunction. Most of the argument before us concerns the weight of the evidence on the contempt hearing. We find our decision on this point disposes of the appeal, and therefore, we make no further comment on the form of the injunction.

The gist of the order appealed from is the court's finding and judgment that these defendants ''are guilty of contempt of this court by attempting to enter into an illegal contract of employment of an assistant state's attorney, against the wishes of the State's Attorney duly elected in this county.''

From the evidence adduced on the hearing, it appears that the defendants appellants are two of the three county commissioners of Williamson county. The commissioners received a letter from the state's attorney, under date of February 24, 1950, requesting an additional assistant. The letter referred to ''unusual and intricate'' questions pending, then stated an experienced attorney was desired, named an attorney, stated his experience, and concluded by requesting ''that you appoint'' him, fix the period of his employment and his salary.

The injunction was served on the morning of February 27, 1950. The commissioners met the same after-

431

noon and passed a motion or resolution by vote of two to one, which conformed in every way to the written request. Before doing so, they consulted the state's attorney about the injunction, and the evidentiary question before us concerns what took place at that consultation.

■ The argument before us has been somewhat confused by appellees' tacit assumption that the board's action is void on its face, because it recites that the designated attorney "is hereby appointed assistant." Reliance is placed upon the statute which provides that the board shall fix the number of assistants and their salaries, but the assistants shall be named by the state's attorney. Chap. 53, par. 18, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 48.095]. We assume there would be merit in this contention if a county board undertook to appoint assistants to the state's attorney without his action. But we find nothing in the statute which prohibits a state's attorney from naming an assistant, informing the board of his choice, and having them authorize the additional assistant, and fix a salary commensurate with the qualifications and experience of the man so selected. For the limited period prescribed in the resolution, the compensation of this assistant fixed by the board, would amount to $1,000 per month, which is considerably more than the state's attorney's salary. Obviously this was not for any assistant who might be available, but for the particular individual selected by the state's attorney.

■■ The fact that the state's attorney specifically asked the board to "appoint" the assistant may not be important, but we do attach significance to the preliminary recital in the resolution, that he "named" him (language of the statute) as assistant. If it is contended this recital is not true, we have a question of fact. If true, we hold as a matter of law that, where

432

the state's attorney names his assistant, specifies his qualifications, and asks the board to fix his compensation, and the board does so, the fact that the board's action is limited by specifying that the named attorney is the appointee does not make its action illegal.

As for the evidence, it is vague on both sides. But, for the defense, it appears that, after the injunction was served, the commissioners consulted the state's attorney, that someone in his office gave them the form for the resolution concerning the assistant, that the state's attorney did not advise them not to adopt it, that they had received nothing revoking it. For the plaintiffs, the state's attorney was called as a witness.

█ He acknowledged that the communication over his signature was genuine, and that the commissioners consulted him after the injunction was served. Then his memory failed. Although the petition for contempt citation was filed in less than two weeks and the hearing was held five days later, he could remember nothing he had said at the consultation. He gave statements as to his thoughts, and what was in his mind, and how he felt. The court properly ruled that he should testify to his own language. At no time was there the slightest attempt to comply with this ruling.

█ Leading questions propounded by plaintiffs' attorney, calling only for the conclusion of the witness, elicited the response that he had advised the board not to make the appointment, and again, that he had not authorized the appointment. Particularly as to the latter, it does not appear whether he was talking about before or after the action taken by the board. Evidence was received as to his action after February 27, 1950, indicating a change of mind relative to the appointment of said assistant. The effect of this was not a question before the court; such evidence was irrelevant on the contempt hearing, and should not be considered.

It is apparent that the chancellor was not satisfied with the testimony before him, and he asked the following question which we set forth *verbatim,* together with the state's attorney's answer:

By the court: "After you wrote and signed this letter of February 24, 1950, did you ever revoke that letter authorizing the appointment of an assistant in the manner in which you requested in that letter? Did you ever withdraw it in any way?" Answer: "No, I didn't."

██ In view of the foregoing, we are obliged to rule that the court's finding and judgment are contrary to the manifest weight of the evidence. We add that, insofar as the propriety of the board's official action depends upon the prior decision of the state's attorney, the commissioners must, of necessity, act upon the decision communicated to them, and they cannot be held responsible, in contempt proceedings, for mental vacillations, or change of decision, not communicated to them.

██ It also appears to this court that appellees recognize the weakness of their position, and they append an entirely different ground for the decision, for which the appellants were afforded no opportunity to defend. This shift of theory on appeal is not approved. *Chicago Title & Trust Co. v. De Lasaux,* 336 Ill. 522. For this reason, it is not further mentioned nor considered.

The judgment of the circuit court is reversed without remandment.

*Judgment reversed.*

Culbertson, J., and Bardens, J., concur.