Marvin B. NATHAN and Natalie J. Nathan, d/b/a Marvin B. Nathan Co., Plaintiffs-Appellants,

v.

TENNA CORPORATION, Defendant-Appellee.

No. 76–1670.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1976.

Decided Aug. 10, 1977.

Rehearing and Rehearing En Banc Denied Oct. 13, 1977.

---

Ira S. Kolb, Narcisse A. Brown, Chicago, Ill., for plaintiff-appellant.

Stanley A. Walton, Chicago, Ill., for defendant-appellee.

Before BAUER, and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

BAUER, Circuit Judge.

In this diversity action, plaintiff seeks to recover commissions purportedly due under the terms of a contract with the defendant. The district court granted the defendant summary judgment on the ground that illegal acts undertaken by the plaintiff in performing the contract rendered the contract unenforceable. We affirm.

## I.

Plaintiff is a manufacturer's representative who contracted to represent Lake Erie Industries, a division of defendant Tenna Corporation, on a nonexclusive basis in procuring orders from the International Harvester Company ("IH"). The contract, entered into on July 1, 1969, provided that Nathan was to be paid a ten percent commission "on all orders received [by Lake Erie] from International Harvester" for five years from the date the first order Nathan procured was accepted by Lake Erie. The agreement was to be effective only if Nathan procured an order before December 31, 1969. The contract was self-renewing for additional five-year periods, and Lake Erie had the right to terminate the agreement upon one year's written notice to Nathan.

Nathan triggered his right to receive commissions under the contract by procuring orders for Lake Erie from IH before December 31, 1969, and continued to procure orders until Lake Erie terminated the contract in December 1974. Lake Erie paid Nathan commissions on all orders he directly procured for them.

In the present suit, Nathan seeks commissions on motor sales made by Lake Erie to IH during the term of the contract that he did not directly procure. His claim is that the contract language requiring Lake Erie to pay him commissions on "all orders received from International Harvester" entitles him to commissions on these sales.

Lake Erie answers that the contract is unenforceable due to an illegal commission-splitting arrangement between Nathan and Kenneth Bryza, the IH buyer who handled all the Lake Erie sales Nathan directly procured. Under that arrangement, Nathan paid Bryza 12.5% of the commissions Tenna paid Nathan for his IH sales. Nathan pleaded guilty to federal mail fraud charges arising from the arrangement.

* The Hon. Robert A. Grant, United States District Court for the Northern District of Indiana, is sitting by designation.

763

Cite as 560 F.2d 761 (1977)

Nathan argues that summary judgment was improperly granted Tenna by the district court because (1) Tenna waived its right to raise the illegality defense by not effectively terminating the contract when it learned of the kickback arrangement; (2) a genuine issue of material fact exists as to whether Nathan engaged in illegal conduct; and (3) any illegal conduct Nathan engaged in affected only the sales he directly procured, not the motor sales.

## II.

*Waiver*

■ Nathan's waiver argument has no merit, for Illinois law [1] does not recognize waivers of illegality defenses or permit a party to be estopped from asserting such a defense. *Hall v. Woods,* 325 Ill. 114, 135, 156 N.E. 258 (1927); *Lyons v. Schanbacher,* 316 Ill. 569, 574–75, 147 N.E. 440 (1925); accord, Restatement of Contracts ¶ 600, Comment a (1932). Illinois courts have adopted the view that

> "the defense is not allowed for the sake of the party seeking to escape his contract, but for the sake of the law. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. . . . Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. . . Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation." *Coppell v. Hall,* 7 Wall. (74 U.S.) 542, 558–59, 19 L.Ed. 244 (1868), cited in *Hall v. Woods, supra* at 135, 156 N.E. at 258.

## III.

*Illegal Conduct*

While Nathan does not deny that he participated in the commission-splitting arrangement with Bryza, he claims that a genuine issue of material fact exists as to whether his participation in the scheme involved illegal conduct on his part. Nathan claims that Bryza coerced his participation in the scheme by threatening to cut off his IH business unless Nathan paid Bryza part of his commissions.[2] Under the circumstances, says Nathan, he must be deemed an innocent victim of economic duress rather than a willing participant in an illegal kickback scheme. We find that Nathan is estopped by his guilty plea to federal mail fraud charges from denying that his participation in the commission-splitting scheme involved illegal conduct.

■ In this diversity action, we must look to Illinois law to determine the collateral estoppel effect of Nathan's guilty plea. *Breeland v. Security Insurance Co. of New Haven, Conn.,* 421 F.2d 918, 921 (5th Cir. 1969). Illinois follows the general rule that the collateral estoppel or res judicata effect of judgments from other jurisdictions is determined by the law of the jurisdiction where the judgment is rendered. *Forrest v. Fey,* 218 Ill. 165, 169, 75 N.E. 789 (1905); *Belton v. Fisher,* 44 Ill. 32 (1867); *Merriam v. Merriam,* 207 Ill.App. 474, 480 (1917); accord, Restatement (Second) of Conflict of Laws § 95 (1971). Since Nathan was convicted in the federal district court for the Northern District of Illinois, we come full circle and apply, as a matter of Illinois law, the law of this Circuit to decide the effect of the judgment.

■ In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted. *Plunkett v. Commissioner of Internal Revenue,* 465 F.2d 299, 305–07 (7th Cir. 1972). Accordingly, Nathan's guilty plea to federal mail fraud charges for splitting

1. Illinois law applies to this diversity action from the district court for the Northern District of Illinois.

2. Nathan supported this claim before the district court with his statements in deposition and at Bryza's federal mail fraud trial.

commissions with Bryza conclusively establishes that his conduct was criminal, and Nathan may not present evidence to the contrary in this civil proceeding. Hence, no material issue exists as to whether Nathan engaged in illegal conduct.

## IV.

### *Effect of Illegal Conduct on Claim*

Nathan next argues that, even if he did participate in an illegal kickback scheme, this should not defeat his right to recover commissions on the sales which he seeks here, for these sales did not result from, and were unrelated to, his illegal conduct.

Nathan bases his argument on decisions permitting partial enforcement of contracts in the face of claims that the contracts were illegal and thus unenforceable as a matter of public policy. *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); *Armstrong v. American Exchange Nat'l Bank,* 133 U.S. 433, 10 S.Ct. 450, 33 L.Ed. 747 (1890); *Richer v. Khoury Bros. Inc.,* 341 F.2d 34, 38 (7th Cir. 1965); *Stolz-Wicks, Inc. v. Comm'l Television Service Co.,* 271 F.2d 586 (7th Cir. 1959); *Central Republic Trust Co. v. Evans,* 378 Ill. 58, 70, 37 N.E.2d 745 (1941); *Ely v. King-Richardson Co.,* 265 Ill. 148, 153, 106 N.E. 619 (1914). Though the cited cases involve a variety of situations that do not lend themselves to easy summation, they can be read as standing for the general proposition that a court will allow a plaintiff to recover in the face of an illegality defense if the illegality involved is sufficiently remote from, or collateral to, the plaintiff's cause of action under the contract.

Nathan argues that the illegal conduct he engaged in is sufficiently remote from his present cause of action to permit recovery of the commissions he seeks. He points out that he made no payments to Bryza for the first sale he procured for Tenna—the sale made before December 1969 that triggered his right to receive commissions under the

Nathan-Tenna contract for all sales made to IH during the contract term.[3] Under Nathan's analysis of the contract, this first sale constituted lawful independent consideration for Tenna's promise to pay him commissions on the IH sales he did not solicit, and his right to receive those commissions was thus not procured by reason of his unlawful arrangement with Bryza.

Nathan, in effect, argues that his contract with Tenna is severable, i. e., that any illegality in the performance of the sales through Bryza affects the commissions only on those sales. All other commissions due him are supported by the lawful, independent consideration of procuring the first sale from Tenna to IH. Nathan claims that this independent consideration vitiates the illegality defense raised by Tenna under the test traditionally applied by many courts, including those in Illinois, to determine whether a contract should be enforced in the face of an illegality defense:

> "An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case." *Armstrong v. American Exchange Nat'l Bank,* 133 U.S. 433, 469, 10 S.Ct. 450, 461, 33 L.Ed. 747 (1890); accord, *Central Republic Trust Co. v. Evans,* 378 Ill. 58, 70, 37 N.E.2d 745 (1941).

We agree that, under the *Armstrong* test, Nathan's argument for enforcement of his claim seems at least sufficiently compelling to overcome a motion for summary judgment, for he avowedly can prove his right to recover under the contract without reference to sales made pursuant to his unlawful arrangement with Bryza. However, courts in recent years have moved away from applying such formal tests to decide whether to enforce a contract tainted with illegality. Instead, they look directly at the extent and seriousness of the illegal conduct and its relationship to the contract at issue. 6A

---

**3.** The record, read in the light most favorable to Nathan, as we must in this appeal from a summary judgment, e. g., *Trotter v. Anderson,* 417 F.2d 1191, 1193 (7th Cir. 1969), supports this averment.

Corbin, Contracts § 1521 (1962 & Supp. 1964); Calamari & Perillo, Contracts, § 378 (1970); see *McConnell v. Commonwealth Pictures,* 7 N.Y.2d 465, 497, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960); *Colyvas v. Red Hand Compositions Co.,* 318 F.Supp. 1376 (S.D.N.Y.1970). The Illinois Supreme Court appears to follow this trend. See *Laleman v. Crombez,* 6 Ill.2d 194, 127 N.E.2d 489, 491 (1955).

In determining pursuant to this trend whether to enforce an ostensibly severable contract in the face of an illegality defense, the following principle applies:

> "If the illegal performance that is promised is heinous in character, criminal or immoral in high degree, it seems certain that the courts will not enforce a promise that accompanies it, however lawful the latter may be, even though the consideration given for the two promises is, when considered separately, a lawful consideration." 6A Corbin, Contracts, § 1522 (1962); accord, Calamari & Perillo, Contracts, § 384 (1970).

This principle applies as well to the situation, as in the instant case, where the promised performance is legal, but the actual performance is illegal, since the two situations traditionally have been treated identically: "A bargain is illegal . . . if either its formation *or its performance* is criminal, tortious, or otherwise opposed to public policy." Restatement of Contracts, § 512 (1932) (emphasis added); see *Lewy v. Standard Plunger Elevator Co.,* 296 Ill. 295, 300, 129 N.E. 775 (1921); *Buckley v. Coyne Electrical School, Inc.,* 343 Ill.App. 420, 428, 99 N.E.2d 370 (1951), *cert. denied,* 342 U.S. 927, 72 S.Ct. 366, 96 L.Ed. 691 (1952).

Looking at the instant case in light of the above, it seems clear to us that public policy dictates that we deny the plaintiff's claim. Nathan's conduct was sufficiently serious in character to prevent the courts from enforcing the arguably severable promise to pay commissions on IH sales other than those procured by Nathan. As well as resulting in a federal mail fraud conviction, Nathan's conduct constituted the crime of commercial bribery under Illi-

nois law. Ill.Rev.Stat. ch. 38, § 29A–1. Criminal conduct of this degree cannot be ignored by a court asked to enforce a contract, even if the promise sought to be enforced is severable from that performed illegally.

Nathan, the party who engaged in illegal conduct, is the plaintiff seeking enforcement of the contract. We share the district court's expressed disdain for the plaintiff's audacity in suing on a contract which he, at least partially, performed by engaging in criminal acts. We agree with the court's conclusion that public policy dictates that the plaintiff's suit be dismissed.

AFFIRMED.