PAUL SCHLOSSER *et al.*, Plaintiffs-Appellants, *v.* PETHERBRIDGE, LINDGREN & ZICKERT, CHARTERED, Defendant-Appellee.

First District (3rd Division)    No. 80-2035

Opinion filed June 10, 1981.

Joyce and Kubasiak, of Chicago (Edward T. Joyce and Steven J. Rotunno, of counsel), for appellants.

Robert L. Lindgren and Gloria H. Richard, both of Lindgren & Zickert, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Paul Schlosser and Edwin Drath, appeal from an order of the trial court dismissing their amended complaint against the defendant law firm, Petherbridge, Lindgren & Zickert, Chartered. The trial court ruled that the complaint failed to state a cause of action upon which relief could be granted. The facts gleaned from the pleadings and from related Federal court decisions are as follows.

In 1967, Petherbridge filed a complaint in the United States District Court on behalf of Panther Pumps & Equipment Co., Inc., for patent infringement against Hydrocraft, Inc., and two of Hydrocraft's officers and shareholders, the plaintiffs. In September 1970, a jury upheld the validity of the patent and awarded damages to Panther against Hydrocraft and plaintiffs. In November 1970, the district court entered judgment on the verdict and also entered a permanent injunction against Hydrocraft and the plaintiffs. On appeal the judgment for money damages against plaintiffs was reversed. The award of damages against Hydrocraft was affirmed as was the grant of the permanent injunction against Hydrocraft and the plaintiffs. *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*

(7th Cir. 1972), 468 F.2d 225, *cert. denied* (1973), 411 U.S. 965, 36 L. Ed. 2d 685, 93 S. Ct. 2143.

Meanwhile, on October 8, 1970, plaintiffs met with Louis Beck, the third shareholder and president of Hydrocraft. At this meeting, Beck stated that in order to avoid the effects of the patent infringement suit, the parties should take the following actions: plaintiffs should transfer their interests in Hydrocraft to Beck; the Hydrocraft assets would be moved to Cleveland, Ohio; Beck would use the transferred assets to form a new corporation which would sell the product in Europe; and plaintiffs would share in the profits after Beck recouped his investment. Thereafter, Beck transferred the Hydrocraft assets to Ohio and, on January 8, 1971, plaintiffs sold their interests in Hydrocraft to Beck for $100 each. Beck, as sole shareholder, formed the new corporation and, in March 1971, the new corporation began to sell a modified version of the original product.

In 1975, Petherbridge learned from plaintiffs of the transfer of the Hydrocraft assets and subsequent sale of the infringing product by the new corporation. Petherbridge, acting on Panther's behalf, filed a rule to show cause why Beck should not be held in contempt for violating the injunction. According to the present complaint, plaintiffs, at Petherbridge's request, agreed to assist in the preparation and trial of the action, and Petherbridge advised them that they would be compensated for their services. Subsequently, the parties agreed upon an hourly rate for plaintiffs' services. In 1976, plaintiffs testified at the contempt trial and produced documents, including affidavits. Drath's affidavit recited that he received neither compensation nor promises of compensation for the services he rendered to Petherbridge. The district court found that Beck had not violated the injunction and was not in contempt. In 1977, this holding was reversed. (*Panther Pumps & Equipment Co. v. Hydrocraft, Inc.* (7th Cir. 1977), 566 F.2d 8.) The reviewing court found Beck to be in contempt for violating the injunction and stated that the transfer of assets to Ohio after the meeting in which plaintiffs agreed to sell their shares to Beck was a fraudulent effort to evade the judgment of the court.

In 1977, Mr. Petherbridge died. In December 1978, Schlosser submitted invoices for services rendered in connection with the contempt proceedings; in January 1979, Drath did the same. Plaintiffs subsequently filed the present complaint alleging a contract for services and seeking $8,316.05. The complaint recited that plaintiffs had delayed their demand for payment at Petherbridge's request. The trial court granted Petherbridge's motion to dismiss plaintiffs' amended complaint on the grounds that any agreement with plaintiffs to aid Petherbridge in the contempt proceedings was unenforceable and would constitute a fraud upon the court since plaintiffs' actions made the proceedings necessary. On appeal plaintiffs challenge the propriety of that ruling.

■■ ■ A contract to perform services which would tend necessarily to influence improperly the administration of justice is unenforceable. (*Lewy v. Standard Plunger Elevator Co.* (1921), 296 Ill. 295, 129 N.E. 775; *Boehmer v. Foval* (1893), 55 Ill. App. 71.) Plaintiffs participated in a fraudulent transfer of assets which precipitated the contempt proceedings. (*Panther Pumps & Equipment Co. v. Hydrocraft, Inc.* (7th Cir. 1977), 566 F.2d 8.) It is rooted in Illinois law that one should not be allowed to benefit from his own wrongdoing. In view of their own wrongful conduct, any agreement by plaintiffs to aid Petherbridge in prosecuting a third party in the contempt proceedings would be void. Consequently, the trial court correctly held that plaintiffs' agreement was unenforceable and properly dismissed the amended complaint.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.