CARL HERINGTON *et al.*, Plaintiffs, v. J.S. ALBERICI CONSTRUCTION COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant (Shield Painting Company, Third-Party Defendant-Appellee).

Fifth District    No. 5—93—0284

Opinion filed August 18, 1994.

Stephen J. Maassen, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellant.

J. Todd Hayes, of Burroughs, Hepler, Broom, MacDonald & Hebrank, of Edwardsville, for appellee.

JUSTICE MAAG delivered the opinion of the court:

Carl Herington and Robert Cowder filed suit against J.S. Alberici Construction Co., Inc. (Alberici), for injuries sustained on November 27, 1989. Herington and Cowder were employed by Shield Painting Co. (Shield) at the time of their injuries. The plaintiffs were engaged in work taking place on Lock and Dam 22, which spans the Mississippi River from Missouri to Illinois. Each plaintiff sought damages due to alleged violations of the Illinois Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992)) and common law negligence. It is undisputed that the injuries occurred in Illinois.

Alberici initially filed several procedural motions which are unrelated to this appeal, and then on January 4, 1991, it filed its answer to plaintiffs' complaint, along with a four-count third-party complaint seeking contribution from Shield under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)).

The third-party complaint was amended twice. In the second amended third-party complaint, Alberici requested in separate counts both contribution under the Contribution Act and "indemnification" from Shield "in such an amount as is attributable to Shield's share of the liability." The "indemnity" claim was based on paragraph 8(c) of

the general conditions of the written subcontract between Alberici and Shield. Paragraph 8(c) states:

"(c) For all Subcontract work performed in Illinois or performed by Illinois Subcontractors, the following term is in effect:

Subcontractor hereby assumes the entire liability for its own negligence and the negligence of its own employees; in addition, Subcontractor hereby assumes the entire liability arising from any alleged violation of the Structural Work Act (Chapter 48, Sections 60—69 Ill. Revised Statutes) that Subcontractor knew of or by the exercise of ordinary care should have known of; Subcontractor agrees to indemnify and save harmless Contractor and its agents, servants and employees, from and against all loss, expense, damage or injury, including legal fees, that Contractor may sustain as a result of any claims predicated or [sic] said allegations of Subcontractor's own negligence or on Subcontractor's alleged violation of the Structural Work Act as above set forth. This provision shall specifically not require Subcontractor to indemnify Contractor from Contractor's own alleged negligence in violation of Chapter 29, Section 61 of the Illinois Revised Statutes. In the event claim of any such loss, expense, damage or injury, as above defined and limited, is made against Contractor, its agents, servants or employees, Contractor may: (1) withhold from any payment due or hereafter becoming due to Subcontractor under the terms of this contract, an amount sufficient in Contractor's judgment to protect and indemnify Contractor from all such claims, expenses, legal fees, loss, damage or injury as above defined and limited; or (2) require Subcontractor to furnish a surety bond in such amount so determined; or (3) require Subcontractor to provide suitable indemnity acceptable to Contractor."

Shield moved to dismiss the complaint. Three arguments were advanced below and in this court in support of the motion: (1) the indemnification agreement contravenes public policy as set forth in the Construction Contract Indemnification for Negligence Act (the Anti-Indemnity Statute) (740 ILCS 35/1 (West 1992)); (2) the indemnification agreement contravenes public policy because it attempts to convert an indemnity action into an *agreement* for contribution without the good-faith settlement provisions and dismissal which flow from a settlement under the Contribution Act; and (3) the prayer for indemnification seeks to circumvent the decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, which limits an employer's contribution liability to the amount of the worker's compensation liability.

The circuit court granted the motion to dismiss the indemnity

counts. The dismissal order was certified pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), and Alberici appealed. The plaintiffs have settled their claims and are not parties to this appeal.

Alberici advances several arguments in support of its appeal of the dismissal order. These will be addressed *seriatim*.

# I

Alberici first claims that Missouri law should be applied to this case. The following facts are cited by Alberici: (1) the subcontract contains a choice-of-law provision which specifies Missouri law as applicable to the subcontract; (2) Shield and Alberici are both Missouri corporations; (3) the contract was entered into in Missouri; (4) the work was to be performed in both Missouri and Illinois; and (5) both plaintiffs are domiciled in Missouri.

According to Alberici, these Missouri contacts, along with the choice-of-law provision in the contract, require the application of Missouri law. Alberici claims that the indemnification requested is permissible under Missouri law. No authority is cited in support of the claim that Missouri law would allow the indemnification request. Rather, Alberici focuses exclusively on a choice-of-law argument.

The primary authority that Alberici relies upon to support its position is *Jarvis v. Ashland Oil, Inc.* (1985), 17 Ohio St. 3d 189, 478 N.E.2d 786. *Jarvis* is similar to the case at bar, but it is also factually distinct. *Jarvis* concluded that under the facts of that case and the principles set forth in Restatement (Second) of Conflicts § 187 (1971), a similar choice-of-law provision should be applied.

In response, Shield argues that under choice-of-law rules applied in Illinois (see *Cook v. General Electric Co.* (1992), 146 Ill. 2d 548, 588 N.E.2d 1087), Illinois law must be applied. Shield bases this argument on the fact that plaintiffs were working in Illinois at the time of injury. Shield does not dispute that Missouri would allow indemnity, but like Alberici Shield cites no authority in support of this proposition.

We decline the invitation to enter this debate. The contract itself resolves the dispute. Therefore, common law choice-of-law principles need not be applied, and we need not analyze the authorities and arguments advanced regarding the common law choice-of-law debate.

■ It is true that one portion of the subcontract (paragraph 31) specifies that Missouri law shall "govern and be applied" to the subcontract. But the very provision of the contract pleaded in Alberici's third-party complaint as the basis for the indemnity claim (paragraph 8(c)) is a specific provision applicable to work performed in Illinois. This Illinois-specific provision contemplates the application

of Illinois law to "all Subcontract work performed in Illinois." As stated earlier, the work performed under the subcontract was performed in both Missouri and Illinois. But the work taking place at the time of plaintiffs' injuries was being performed in Illinois, and the plaintiffs were injured in Illinois.

> "Where one intention is expressed in one clause of an instrument and a different, conflicting intention appears in another clause of the same instrument, full effect should be given to the clause which is the more principal and specific, and the general clause should be subjected to such modification or qualification as the specific clause makes necessary." *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 909, 511 N.E.2d 912, 917.

We conclude that the specific provision must control over the general one. Illinois law applies.

## II

Alberici next argues that if Illinois law applies, the agreement does not contravene the Anti-Indemnity Statute. The Anti-Indemnity Statute states:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 1992).

Alberici contends that no indemnity is being sought by it for liability arising from its own negligence. Rather, indemnity is sought only for that portion of the liability attributable to Shield's own negligence or violation of the Structural Work Act. Thus, it is claimed that paragraph 8(c) of the subcontract does not violate the statute. Relying upon *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932, Alberici argues that contractual indemnity provisions of the type contained in the Alberici/Shield subcontract are outside the scope of the statute because indemnity is being sought from Shield only for liability that attaches to Alberici by virtue of Shield's own fault.

■ Alberici's *argument* is tantalizing—but wrong; its *conclusion* is correct. We agree that the Anti-Indemnity Statute is inapplicable. We disagree as to the reason.

We disagree because Alberici's argument and the *Dixon* decision proceed from a false premise. There is a difference between paying for a piece of apple pie and paying for the entire pie.

"There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead." W. Prosser, Torts § 51, at 310 (4th ed. 1971).

Where Alberici and *Dixon* go astray is in concluding that such a thing as "partial indemnity" exists. It does not. Our supreme court clearly delineated the difference between contribution and indemnity in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 7, 374 N.E.2d 437, 439, and quoted Professor Prosser on this distinction. (See also *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, 46, 374 N.E.2d 455, 457 (where a prayer for "partial indemnity" was construed as a contribution claim).) The legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains. *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.

In sum, to the extent that Alberici seeks reimbursement from Shield based upon paragraph 8(c) of the subcontract and describes the prayer as one for "partial indemnity," we conclude that what is really requested is contribution. *Stevens*, 70 Ill. 2d 41, 374 N.E.2d 455.

Because we now must consider a contribution claim and not a partial indemnity claim, the Anti-Indemnity Statute is not violated. But that is because the statute deals with indemnity, not contribution.

■The question then becomes: Is there such a thing as contractual contribution? We conclude that if paragraph 8(c) were construed to create a cause of action for contractual contribution, independent of the Contribution Act, such a construction would contravene the public policy of Illinois.

Our Contribution Act was carefully crafted by the legislature as a codification of the *Skinner* decision. A key provision of the Contribution Act (740 ILCS 100/2(d) (West 1992)) provides that upon a finding that a good-faith settlement has been entered into between the plaintiff and one of the joint tortfeasors, the settling party is entitled to be dismissed from the action. It is elementary that the public policy of Illinois favors settlement. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325, 472 N.E.2d 791, 795.) If a contractual contribution claim were allowed without the accompanying dismissal provision in the event of settlement, our public policy in favor of settlement would be frustrated. Such a result would effectively eliminate settlements by joint tortfeasors under the Contribution Act.

But we do not believe that paragraph 8(c) created a new cause of action. As will be explained in part III, we believe that paragraph 8(c) of the subcontract merely modified the legal relations and available defenses of the parties under the law.

We agree with the court in *Pettie v. Williams Brothers Construction, Inc.* (1992), 225 Ill. App. 3d 1009, 589 N.E.2d 169, that a cause of action based on contractual contribution cannot be allowed (at least without a good-faith-settlement provision) because it would run afoul of the good-faith-settlement and dismissal provisions of the Contribution Act.

## III

We have addressed the first two arguments that were advanced in the trial court as a basis for dismissal. We must still address the third ground that was raised.

Paragraph 8(c) is not void and against public policy. Only a construction of that paragraph that would allow a separate contractual contribution action without the good-faith-settlement provisions of the Contribution Act is improper. The construction of a contract is a question of law to be resolved by the courts. (*Fields v. Franklin Life Insurance Co.* (1983), 115 Ill. App. 3d 954, 451 N.E.2d 930.) It is, therefore, our job to construe paragraph 8(c) and determine the bargained-for rights of the parties.

Shield argued below and argues in this court that allowing a cause of action to flow from paragraph 8(c) would circumvent the decision in *Kotecki*, which limited an employer's contribution liability to the amount of worker's compensation liability.

■ We conclude for the reasons that follow that Shield has contractually waived the worker's compensation defense enjoyed by employers and discussed in *Kotecki*, and Shield is liable for unlimited contribution, undiminished by the worker's compensation limitation.

In paragraph 8(c), Shield assumed "the entire liability" for its own negligence and the "entire liability" arising from any violation of the Structural Work Act on its part. Shield agreed to "indemnify and save harmless" Alberici from any damages Alberici may be required to pay because of negligence on Shield's part or a violation of the Structural Work Act by Shield. We have previously held that this agreement was in truth an agreement to make contribution. Just as our supreme court in *Stevens* concluded that a prayer for partial indemnity was really a prayer for contribution, we believe that the subject of paragraph 8(c) was contribution.

Even if paragraph 8(c) were omitted from the subcontract, Shield would have had a legal obligation to pay contribution if found liable.

*Kotecki* merely limited this obligation to the amount of the worker's compensation liability. Paragraph 8(c) explicitly provides that Shield assumes its "entire liability." This may exceed its worker's compensation liability.

The defense afforded employers under the Workers' Compensation Act (820 ILCS 305/11 (West 1992)), which was recognized in *Kotecki* as limiting an employer's liability, is not automatic. It is an *affirmative* defense that must be pleaded and proven. An employer, to gain the benefits of the defense, must raise it or it is no defense at all. *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382.

Under *Doyle*, if the defense is not raised, common law liability attaches. *Doyle* recognizes that there may be valid reasons for an employer to choose not to raise the defense, *e.g.*, the employer may believe that "the plaintiff will be unable to prove negligence to a jury's satisfaction." (*Doyle*, 101 Ill. 2d at 10, 461 N.E.2d at 387.) Our supreme court specifically held that the employer is a person "subject to liability in tort" for purposes of the Contribution Act. *Doyle*, 101 Ill. 2d at 11, 461 N.E.2d at 387.

If an employer is free to choose whether to raise the worker's compensation defense after suit is filed, we see no reason why an employer may not bargain away that defense as part of a subcontract. Just as an employer may choose not to raise the defense in a direct suit by an employee because it may believe it will prevail, the employer may agree to waive the defense as part of the contract bargaining process.

Parties to contracts frequently adjust their legal rights and give up defenses by contract. *Village of Lake in the Hills v. Illinois Emcasco Insurance Co.* (1987), 153 Ill. App. 3d 815, 506 N.E.2d 681 (agreement by contract to modify the statute of limitations upheld); *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324 (agreement by city to forego prosecution for building code violations in exchange for promise to make repairs upheld); *ETA Trust v. Recht* (1991), 214 Ill. App. 3d 827, 574 N.E.2d 4 (agreement to submit to jurisdiction upheld).

We believe that when Shield entered into the subcontract with Alberici containing the terms set out in paragraph 8(c) of the subcontract, it waived the worker's compensation limits recognized in *Kotecki* as a defense in a contribution claim, but only as between it and Alberici. The defense of limited liability under the Workers' Compensation Act was bargained away.

## Conclusion

We therefore hold that paragraph 8(c) of the subcontract consti-

tutes a waiver of the *Kotecki* limitations. This waiver contravenes no public policy and is in conformity with the choice available to employers, *i.e.*, whether or not to raise the defense. (*Doyle*, 101 Ill. 2d 1, 461 N.E.2d 382.) However, as a matter of pleading we believe the dismissed counts were surplusage. The original counts seeking contribution under the Contribution Act gave Shield the opportunity to raise the *Kotecki*/worker's compensation defense as an affirmative defense. Alberici then could have pleaded paragraph 8(c) either by motion or as a reply to the affirmative defense. For these reasons, we affirm the dismissal of the counts, but we modify the court's order pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)) so as to make the dismissal without prejudice. Further, Alberici shall have 30 days after the mandate issues to plead by motion or in reply to Shield's affirmative defense that Shield has waived any contribution limitation by virtue of its subcontract with Alberici.

Affirmed as modified, with directions, and remanded.

GOLDENHERSH and WELCH, JJ., concur.