JAMES P. ROME, Plaintiff-Appellant, v. TERRY H. UPTON, Defendant-Appellee.

First District (5th Division)    No. 1—93—2691

Opinion filed March 31, 1995.

Michael J. Goldstein & Associates, of Chicago (Michael J. Goldstein, of counsel), for appellant.

Balonick, Bloch & Tornheim, of Chicago (Milton A. Tornheim, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiff James Rome filed a complaint against defendant Terry Upton for breach of contract. The contract between the parties required plaintiff to complete an application for public financing for the Montrose Harbor Apartments Project. Upon announcement of approval of public financing, defendant was to pay plaintiff 1.25% of

the announced amount. Plaintiff completed the application, and the city council of Chicago passed an ordinance authorizing $8.5 million in public financing. When defendant did not pay 1.25% of this financing, approximately $100,000, plaintiff sued for breach of contract. Defendant filed a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), claiming the underlying contract was void as being against the public policy of the State. The trial court granted the motion, from which plaintiff appeals.

We affirm.

BACKGROUND

On July 23, 1986, plaintiff and defendant entered into their contract, which stated:

"The following Proposal, dated as of July 8, 1986, is hereby submitted regarding obtaining public financing ('Public Financing') ***.

I. SERVICES:

A. Application and related financial information activities of assembling information on site control, financial commitments (equity and private financing), and other information requested or required by the U.S. Department of Housing and Urban Development, the City of Chicago ('City'), and/or the State of Illinois, presentations to appropriate city agencies and elected Committees of City Council and shepherding environmental review through to completion.

B. Post-Submission activities consist of responding to all inquiries relating to the Application, such as providing additional documentation, clarifications, and attending working meetings relating to the Application.

UPON ANNOUNCEMENT OF APPROVAL OF PUBLIC FINANCING(S), THE FOREGOING SERVICES ARE DEEMED COMPLETED.

Fees for services in obtaining the Public Financing(s) will be the higher of 5% of the aggregate amount of Public Financing(s) obtained, or $15,000, plus expenses. ***

Payment of Fees shall be as follow[s]:

1. An initial, non-refundable retainer of $5,000;

2. Upon announcement of approval of Public Financing (or each of them if from more than one source), 25% of 5% of the announced amount;

3. Upon closing of each Public Financing transaction, the balance of fees for said transaction is then due and owing."

On March 18, 1987, the city council of Chicago passed an ordinance authorizing the city to provide financing for the project by issuing $6,500,000 in taxable revenue bonds and agreeing to lend $2 million in city funds. However, defendant did not pay plaintiff any money upon this announcement of public financing.

On December 4, 1989, plaintiff filed his complaint for breach of contract, alleging that he performed all services as required under the contract and demanding approximately $100,000 from the defendant. Plaintiff moved for summary judgment on September 13, 1990. This motion was denied on March 25, 1991, with the trial court entering its order as follows:

> "It is hereby ordered that Plaintiff's motion for Summary Judgment is denied based on the fact that the underlying agreement is void as being against the public policy of the State of Illinois."

On May 5, 1993, defendant moved to dismiss pursuant to section 2—615 (735 ILCS 5/2—615 (West 1992)), but later amended his motion as being pursuant to section 2—619 (735 ILCS 5/2—619 (West 1992)). The defendant claimed the contract was void as being against public policy and therefore not enforceable.

In response to defendant's motion, plaintiff claimed he was not a lobbyist and thus his contingent fee was not void as against public policy. Plaintiff provided an affidavit in support which stated:

> "6. Pursuant to the Agreement, I prepared a proposal to the City of Chicago ***.
> ***
>
> 8. My clients and I met with the alderman for the ward in which the project was to be located at the alderman's request, to explain the project and answer questions about it.
>
> 9. My clients and I were requested by the Department of Housing to be available during the pendency of the ordinance enactment proceedings to answer any questions by elected officials regarding the project. However, neither I nor my clients were called upon during the legislative deliberations to answer any such questions.
>
> 10. Other than what is set forth above, at no time did I ever communicate with any elected official of the City of Chicago with regard to any matters set forth in the Agreement."

However, the trial court granted defendant's motion to dismiss on July 8, 1993, from which plaintiff appeals.

OPINION

The trial court found the contract at issue as void against the public policy of this State. We agree. As a general rule, courts will not enforce a private agreement which is contrary to public policy. (*Holstein v. Grossman* (1993), 246 Ill. App. 3d 719, 725, 616 N.E.2d

1224; *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, 341, 537 N.E.2d 730.) Public policy is the legal principle that no one may lawfully do that which has a tendency to injure the public welfare. (*Holstein*, 246 Ill. App. 3d at 726; *O'Hara*, 127 Ill. 2d at 341.) The public policy of this State is reflected in its constitution, its statutes, and its judicial decisions. (*Holstein*, 246 Ill. App. 3d at 726; *O'Hara*, 127 Ill. 2d at 341.) A court will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this State, as public policy itself strongly favors freedom to contract. (*Holstein*, 246 Ill. App. 3d at 726.) The question of whether a contract is enforceable under considerations of public policy is a conclusion of law. *Holstein*, 246 Ill. App. 3d at 726.

■ The State's policy on contingent fee contracts for obtaining legislation is expressed by statute:

> "Contingent fees prohibited. No person shall retain or employ another to promote or oppose legislation for compensation contingent in whole or in part upon the passage or defeat of any legislation, or the approval or veto of any legislation by the Governor, and *no person shall accept any such employment or render any such service for compensation contingent upon the passage or defeat of any legislation* or the approval or veto of any legislation by the Governor." (Emphasis added.) (25 ILCS 170/8 (West 1992).)

This policy on contingent compensation for obtaining legislation extends to city councils as well as the General Assembly. (*In re Browning* (1961), 23 Ill. 2d 483, 494, 179 N.E.2d 14; *Crichfield v. Bermudez Asphalt Paving Co.* (1898), 174 Ill. 466, 479, 51 N.E. 552.) *Browning* stated:

> "All agreements whose object or tendency is improperly to interfere with or influence legislative action, either by congress, the General Assembly, or by a city council or other like body, are contrary to public policy and void. Thus contingent fee contracts for procuring favorable legislation are void ***." (*Browning*, 23 Ill. 2d at 494.)

We believe the contract at issue comes within the prohibition of *Browning*. This contract was for "shepherding" favorable legislation with a contingent fee due upon its passage, and thus the contract was contrary to public policy and void.

■ The plaintiff argues that the contract may stand because no lobbying or personal influence was contemplated by the contract or performed on its behalf. However, these facts have no bearing on the application of the contingent fee prohibition. *Browning* stated, "[C]ontingent fee contracts for procuring favorable legislation are void since such a contract tends *necessarily* to influence legislation

improperly, for the promise of payment of a contingent fee is a direct and strong incentive to the exertion of not merely personal but sinister influence of the legislative body." (Emphasis added.) (*Browning*, 23 Ill. 2d at 494.) *Crichfield* further explained this rationale:

"It is not necessary that improper influences should have been used in a particular case to affect such a contract with nullity. The law looks to the general tendency of things; it opposes the beginnings of evil; it shuts the door against temptation by sweeping rules, which admit of no evasions." (*Crichfield*, 174 Ill. at 480.)

Thus, *Crichfield* concluded, "It matters not that nothing improper was done *or was designed to be done* by the plaintiff. It is enough that such is the tendency of the contract ***." (Emphasis added.) *Crichfield*, 174 Ill. at 482.

The prohibition against contingent fees is so sweeping precisely because we cannot always trust the "good-faith" claim the plaintiff makes in the instant matter. We would not expect a party to announce its contemplation or use of "sinister influences" against public bodies. Although plaintiff cites *Zeigler v. Illinois Trust & Savings Bank* (1910), 245 Ill. 180, 91 N.E. 1041, for the proposition that parties must be granted the utmost freedom to contract, *Zeigler* also said, "The evil tendency of a contract is sufficient to condemn it. [Citations.] The test is the evil tendency of the contract,—not its actual injury to the public in particular case." (*Zeigler*, 245 Ill. at 183-84.) Neither the contingent fee statute nor any precedents allow an exception for the "good-faith" contingent fee plaintiff seeks, and we follow *Browning* and *Crichfield* by declaring this contingent fee void regardless of the plaintiff's intentions or actions.

Plaintiff relies on *Lewy v. Standard Plunger Elevator Co.* (1921), 296 Ill. 295, 129 N.E. 775, but that case does not contradict the trial court's ruling. *Lewy* allowed a salesman his commission on elevator sales to the State. *Lewy* stated, "We do not think there is any rule of law which makes it illegal to negotiate a contract for the sale of goods or supplies to a public agency for public purposes." (*Lewy*, 296 Ill. at 300.) However, *Lewy* is inapposite to the instant case where plaintiff was seeking an allocation of millions of dollars in funding, not merely a "sale of goods and supplies." *Lewy* explained, "[T]he percentage allowed by established custom of commission merchants and brokers, though dependent upon sales made, is not regarded as contingent compensation in the obnoxious sense of that term, which has been so often the subject of animadversion by this court, as suggesting the use of sinister or corrupt means for accomplishing a desired end." (*Lewy*, 296 Ill. at 301.) Contrary to the sales contract in *Lewy*, the plaintiff in the instant case was retained to promote legisla-

tion for compensation contingent upon the passage of an ordinance by the City of Chicago to provide financing by issuing bonds and agreeing to lend city funds. We hold that the trial court did not err in finding that the "agreement is void as being against the public policy of the State of Illinois."

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and T. O'BRIEN, JJ., concur.