CURTIS BRAYE, Plaintiff, v. ARCHER-DANIELS-MIDLAND COMPANY, Defendant and Third-Party Plaintiff-Appellee (All Tri-R, Inc., Third-Party Defendant-Appellant).

Fourth District    No. 4—95—0499

Argued November 7, 1995.—Opinion filed December 21, 1995.

COOK, P.J., concurring in part and dissenting in part.

Alexander M. Wilson (argued), of Evans & Dixon, of Edwardsville, for appellant.

Frederic L. Kenney (argued), of Winters, Featherstun, Gaumer, Kenney, Postlewait & Stocks, of Decatur, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Third-party defendant All Tri-R, Inc. (All Tri-R), brings this interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) following the decision in the circuit court of Macon County to

allow Archer-Daniels-Midland Company (ADM) to amend its third-party complaint. We are called upon to consider the following question certified by the circuit court:

"Whether the liability cap in third[-]party actions provided to an employer who pays an injured employee's worker[s'] compensation benefits may be waived by contract, and if so, whether a contract which states:

'If [All Tri-R's] work under the order involves operations by [All Tri-R] on the premises of [ADM] or one of its customers, [All Tri-R] shall take all necessary precautions to prevent the occurrence of any injury to person or damage to property during the progress of such work and, except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Tri-R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R], its agents, employees or subcontractors[ ]'

is an enforceable contract for contribution."

We answer the first part of the question in the affirmative, and the second part in the negative.

The underlying case arises from a construction accident that occurred on June 12, 1991. Plaintiff Curtis Braye was employed as a welder by All Tri-R, a construction firm, and working on construction of a boiler at ADM's cogeneration plant in Decatur. Braye and his partner, Cecil Baker, were on a motorized scaffold at the 88-foot level of the boiler when the scaffold swung out from under their feet. Braye's lanyard failed, and he fell to the ground, suffering numerous injuries. He filed a workers' compensation claim against All Tri-R, which was settled for $172,000.

On January 25, 1993, Braye filed a complaint against ADM for alleged violations of section 1 of the Structural Work Act (740 ILCS 150/1 (West 1992)). ADM moved to dismiss the complaint. In response, Braye filed an amended complaint on February 3, 1994. ADM denied the allegations of the amended complaint and brought a third-party action against All Tri-R for contribution, limited to the amount paid to Braye in workers' compensation benefits. All Tri-R denied the allegations of the third-party complaint.

On March 9, 1995, ADM moved to amend its third-party complaint against All Tri-R. ADM sought unlimited contribution based on the boiler construction contract and the fifth district's decision in *Herington v. J.S. Alberici Construction Co.* (1994), 266 Ill. App. 3d 489, 639 N.E.2d 907. The trial court denied the motion, finding the contract was unenforceable under the Construction Contract

Indemnification for Negligence Act (Indemnification Act) (740 ILCS 35/0.01 *et seq.* (West 1994)).

On March 29, 1995, ADM filed a new motion to amend its third-party complaint, based upon a statement on the back of a purchase order which also governed the construction work on the boiler. At the hearing, the trial court found the purchase order did not violate the Indemnification Act and should be applied under *Herington*. Thus, it allowed ADM's motion to file an amended third-party complaint seeking unlimited contribution. All Tri-R requested leave to file an interlocutory appeal, pursuant to Rule 308. The trial court granted the request and certified the question now presented to this court.

## I

■ We first address the issue of whether the liability cap provided to employers in third-party contribution actions can be waived by contract. Under section 11 of the Workers' Compensation Act (Act), an employer is protected against a suit in tort by its employee. (820 ILCS 305/11 (West 1994).) Nonetheless, an employer cannot bar a claim for contribution asserted by a defendant liable to the injured employee. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Vickrey v. Caterpillar Tractor Co.* (1986), 146 Ill. App. 3d 1023, 497 N.E.2d 814.) However, in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, our supreme court ruled that an employer's liability in contribution is limited by the amount of its workers' compensation liability to the employee. Recently, however, the fifth district held that an employer may contractually waive the limited liability afforded it by *Kotecki. Herington*, 266 Ill. App. 3d at 496, 639 N.E.2d at 912.

In *Herington*, two workers employed by a paint company were injured while working on a construction company's jobsite. The workers filed suit against the construction company. The construction company filed a third-party complaint against the employer paint company, seeking contribution based on a contract between them. The contract contained a provision which stated: " '[Employer] hereby assumes the entire liability for its own negligence ***.' " (*Herington*, 266 Ill. App. 3d at 491, 639 N.E.2d at 909.) According to the fifth district, the employer's agreement to pay for all liability arising from its acts constituted a waiver of the liability cap recognized in *Kotecki. Herington*, 266 Ill. App. 3d at 496-97, 639 N.E.2d at 912.

All Tri-R urges us not to follow the lead of the fifth district. It argues *Herington* is bad law because it is based on faulty reasoning. Additionally, All Tri-R suggests that the liability cap cannot be waived because it is not an affirmative defense. We reject All Tri-R's arguments.

■ If an employee brings suit against his employer, protection under the Act is not automatic. An employer will be liable in tort until it asserts the exclusive remedy defense of the Act. (*Doyle,* 101 Ill. 2d at 10, 461 N.E.2d at 387; *Herington,* 266 Ill. App. 3d at 496, 639 N.E.2d at 912.) However, while an employer may normally be expected to avail itself of the Act's protection, it may elect to waive the workers' compensation defense; it is a matter of choice. (*Geise v. Phoenix Co. of Chicago, Inc.* (1994), 159 Ill. 2d 507, 514, 639 N.E.2d 1273, 1276; *Doyle,* 101 Ill. 2d at 10, 461 N.E.2d at 387.) The court in *Herington* reasoned that if an employer is free to choose whether to raise the defense after suit is filed, the employer may bargain away the Act's protection as part of a contract. (*Herington,* 266 Ill. App. 3d at 496, 639 N.E.2d at 912.) We agree with the reasoning of the fifth district.

Parties often adjust their legal rights and give up defenses by contract. (*Herington,* 266 Ill. App. 3d at 496, 639 N.E.2d at 912, citing *Village of Lake in the Hills v. Illinois Emcasco Insurance Co.* (1987), 153 Ill. App. 3d 815, 506 N.E.2d 681 (agreement by contract to modify the statute of limitations upheld); *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324 (agreement by city to forego prosecution for building code violations in exchange for promise to make repairs upheld); *ETA Trust v. Recht* (1991), 214 Ill. App. 3d 827, 574 N.E.2d 4 (agreement to submit to jurisdiction upheld).) Furthermore, it is not uncommon for an employer to bargain away the protection of the Act. Employers may contract to supplement the employee benefits conferred by the Act or to relax the requirements of the Act. (*Fredericks v. Liberty Mutual Insurance Co.* (1994), 255 Ill. App. 3d 1029, 1033-34, 627 N.E.2d 782, 786; *Board of Education v. Chicago Teachers Union, Local No. 1* (1980), 82 Ill. App. 3d 354, 359, 402 N.E.2d 641, 645, *aff'd* (1981), 86 Ill. 2d 469, 427 N.E.2d 1199; 4 A. Larson, Law of Workmen's Compensation § 97.52 (1989).) Clearly, an employer should be able to bargain away the liability cap provided under *Kotecki.*

In addition, All Tri-R has provided no support for its contention that the liability cap cannot be waived. Nonetheless, prior to *Herington,* the second district addressed the issue in *Pavelich v. All American Homes, Inc.* (1992), 239 Ill. App. 3d 173, 606 N.E.2d 859, *appeal denied sub nom. Highland Meadows Subdivision v. John Pavelich Construction Co.* (1993), 149 Ill. 2d 649. There, the court held that if an employer chooses not to raise the workers' compensation defense in a suit brought by its employee, the employer cannot assert the *Kotecki* liability cap in a third-party contribution action. (*Pavelich,* 239 Ill. App. 3d at 177, 606 N.E.2d at 861-62.) Thus, an employer can effectively waive the liability cap.

Like the court in *Herington*, we are similarly convinced that the *Kotecki* liability cap provided to employers in third-party contribution actions can be waived by contract. However, we disagree with *Herington* on one point. The fifth district noted that the employer waived the benefits discussed in *Kotecki* as part of the contract bargaining process. (*Herrington*, 266 Ill. App. 3d at 496, 639 N.E.2d at 912.) However, as the injuries there were sustained in November 1989, the parties necessarily entered into the contract prior to the 1991 issuance of the *Kotecki* opinion. We have difficulty discerning how an employer can knowingly bargain away its *Kotecki* liability cap prior to the origin of the liability cap. Instead, we believe the employer was liable for unlimited contribution, not because it waived the *Kotecki* cap, but because the *Kotecki* cap did not yet exist.

Therefore, while we hold that an employer can contractually waive its liability cap in contribution actions, the issue of waiver does not arise in contracts entered into prior to *Kotecki*.

## II

■ We next address whether the purchase order for construction of the boiler is an enforceable contract for contribution. Specifically, we are concerned with the provision of the purchase order which states, in relevant part:

> "[E]xcept to the extent that any such injury or damage is due solely and directly to [ADM's] negligence, *** [All Tri-R] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R]."

All Tri-R argues that the provision requires it to pay for all loss, except when ADM is 100% liable. Thus, All Tri-R maintains that the purchase order is a contract for indemnity and is unenforceable under the Indemnification Act.

ADM agrees that the provision places all loss on the shoulders of All Tri-R except when ADM is 100% liable. However, ADM contends the purchase order is a contract for contribution. It maintains that indemnity is a promise to pay regardless of fault. Because All Tri-R would pay nothing if it is not at fault, the contract cannot be one for indemnity.

ADM cites no authority, nor do we find any, to support its argument. Indemnity and contribution are separate and distinct concepts. Contribution contemplates distribution of liability for loss among joint tortfeasors according to each party's percentage of relative fault. Indemnity, on the other hand, allows one tortfeasor to shift the entire loss to another tortfeasor; it imposes an obligation for one to make good a loss incurred by another. *Dixon v. Chicago & North*

*Western Transportation Co.* (1992), 151 Ill. 2d 108, 118, 601 N.E.2d 704, 708-09; *City of Marshall v. City of Casey* (1989), 177 Ill. App. 3d 1065, 1070, 532 N.E.2d 1121, 1123-24, *appeal denied* (1989), 125 Ill. 2d 567.

In this case, All Tri-R would be forced to pay for all loss when it was merely 1% liable. This does not amount to distribution of loss according to relative culpability. If the contract were one for contribution, ADM and All Tri-R would each be responsible for its own acts or omissions—in this example, ADM would pay for 99% of the loss and All Tri-R would pay for its 1% share. Instead, under this contract, ADM is held harmless for its own negligence. Clearly, such a result falls under the rubric of indemnity.

We find the purchase order to be a contract holding ADM harmless for its own negligence and not a contract merely for contribution. Thus, we hold the contract is unenforceable as it violates the Indemnification Act.

### III

For the reasons set forth above, we answer the first part of the question in the affirmative, although the issue of waiver does not apply in this case, and the second part in the negative.

Question answered.

STEIGMANN, J., concurs.

PRESIDING JUSTICE COOK, concurring in part and dissenting in part:

I agree with the majority's conclusion this contract violates the Indemnification Act. (740 ILCS 35/1 (West 1992) (every provision in a construction contract "to indemnify or hold harmless another person from that person's own negligence is void as against public policy").) Any attempt by ADM to contract away its own negligence in a construction setting is void, even if that negligence is comparatively minimal, and even if the other contracting party is itself negligent. The majority indicates the parties could agree, however, to contribution—that each be responsible for its own acts and omissions. *Herington* asked whether parties could contract for their own form of contribution, separate from the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)), and concluded they could not—that such a contract would violate the public policy of Illinois. "Our Contribution Act was carefully crafted by the legislature as a codification of the [*Skinner v. Reed-Prentice*

*Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437,] decision." (*Herington,* 266 Ill. App. 3d at 494, 639 N.E.2d at 911.) I agree with *Herington* on that issue. *Herington* went on to conclude that the supreme court's decision in *Kotecki* could be contracted away. I disagree with *Herington* on that issue.

Parties are not free to enter into contracts which violate public policy. It is the policy of the Workers' Compensation Act that "[t]he compensation herein provided *** shall be the measure of the responsibility of any employer." (820 ILCS 305/11 (West 1994).) In 1967, the supreme court determined that policy must yield to the right of a third-party plaintiff, who was only passively negligent, to seek implied indemnity against an employer who was actively negligent. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 288-89, 226 N.E.2d 630, 640.) The court, however, has taken a different view now that Illinois law has been changed to allow contribution among joint tortfeasors. A third-party plaintiff is now allowed to bring an action against the employer for contribution, but the amount of that contribution is limited to the employer's workers' compensation liability. (*Kotecki,* 146 Ill. 2d at 164, 585 N.E.2d at 1027.) The *Kotecki* court noted there was a conflict between the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*) and the Workers' Compensation Act, and that its solution was the one " 'we consider most consistent with fairness and the various statutory schemes before us.' " *Kotecki,* 146 Ill. 2d at 165, 585 N.E.2d at 1028, quoting *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 130, 257 N.W.2d 679, 689.

*Kotecki* is as much a part of the Contribution Act and the Workers' Compensation Act as is the statutory language. A third party with bargaining power, such as ADM, may not demand that an employer, such as All Tri-R, contract for a nonstatutory form of contribution or of workers' compensation. Such a construction would contravene the public policy of Illinois. (See *Herington,* 266 Ill. App. 3d at 494, 639 N.E.2d at 911.) *Herington* argues, however, that employers generally have a legal obligation to pay contribution, and "*Kotecki* merely limited this obligation to the amount of the worker's compensation liability." (*Herington,* 266 Ill. App. 3d at 496, 639 N.E.2d at 912.) Even if I agreed that supreme court decisions which merely limit statutory obligations could be contracted away, I would disagree there is any obligation on the part of an employer to pay contribution, separate from *Kotecki*. It was not automatic, after Illinois allowed third-party active-passive indemnity actions against employers, that it would allow contribution actions. Contribution actions are a more serious infringement on the exclusive remedy statutory policy than are active-passive indemnity actions. It is not correct

that *Skinner* and *Doyle* first allowed full contribution, and *Kotecki* then limited the amount of that contribution. The supreme court's decisions in this area must be read as a whole. There is no supreme court decision which allows unlimited contribution. *Kotecki*, 146 Ill. 2d at 162, 585 N.E.2d at 1026 (question of limit on employer's liability not answered in *Doyle*).

The argument made in *Herington*, that employers may choose not to raise the defense of the Workers' Compensation Act in a negligence action, and therefore may choose to contract away their rights under the Act, is unpersuasive. There is a difference between settling a loss after it has occurred, or failing to contest a claim, and requiring a party to give up his rights in advance. The majority cites *Board of Education* for the proposition that employers may contract to supplement employee benefits under the Act. It is true that employers often provide health insurance and other benefits to employees in addition to the benefits to which the employees are entitled under the Act. The Act provides for a credit in that situation, to avoid double recovery. (See 820 ILCS 305/8(j) (West 1994).) The employer in *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 476, 427 N.E.2d 1199, 1201-02, did not assert its right to those credits, and accordingly waived its right to them. See also *Board of Education*, 86 Ill. 2d at 479, 427 N.E.2d at 1203 (Underwood, J., specially concurring).

The only contribution we have in Illinois is limited to an employer's workers' compensation liability. Parties are not free to create their own Contribution Act or their own Workers' Compensation Act. I would answer both certified questions in the negative.