669 N.E.2d 1192 (1996)
283 Ill. App.3d 141
218 Ill.Dec. 666
Ardis LICCARDI, Indiv. and as Special Adm'r of the Estate of Arthur Farmer, Deceased, Justin Farmer, Larry Farmer, Kenneth Farmer, James Farmer, Ardis Farmer, Antoinette Liccardi, and Melissa Farmer, Plaintiffs,
v.
STOLT TERMINALS (CHICAGO), INC., Defendant and Third-Party Plaintiff-Appellant (Jetstream of Houston, Inc., Technical Specialties, Inc., Jarvis Engineering Company, and Combined Plant Services, Inc., Defendants, Gundersen/Viking, Inc., Third-Party Defendant-Appellee).
No. 1-95-0863.
Appellate Court of Illinois, First District, Fifth Division.
August 23, 1996.
Rehearing Denied September 26, 1996.
*1195 Lord, Bissell & Brook, Chicago (Hugh C. Griffin, C. Kevin McCabe and Stephanie A. Burris, of counsel), for Appellant.
Seyfarth, Shaw, Fairweather & Geraldson, Chicago (Jeremy P. Sackmann, Brent I. Clark and Joshua R. Rich, of counsel), for Appellee.
Justice COUSINS delivered the opinion of the court:
The appellant and third-party plaintiff, Stolt Terminals (Chicago), Inc. (Stolt), filed a third-party complaint seeking contribution from appellee and third-party defendant, Gundersen/Viking, Inc. (Gundersen). Stolt contracted with Gundersen for it to clean Stolt's storage tanks, and a Gundersen employee died while waterblasting a tank on Stolt's property. Decedent's relatives sued Stolt pursuant to alleged violations of the Structural Work Act (740 ILCS 150/1 (West 1994)). After Stolt sought contribution from Gundersen, Gundersen moved to limit any contribution award to the amount of its workers' compensation liability, the contribution limit for employers imposed by the supreme court in Kotecki v. Cyclops Welding Corp., 146 Ill.2d 155, 166 Ill.Dec. 1, 585 N.E.2d 1023 (1991). Stolt responded that Gundersen had waived the Kotecki contribution limit in its contract with Stolt, relying on the fifth district case of Herington v. J.S. Alberici Construction Co., 266 Ill.App.3d 489, 203 Ill.Dec. 348, 639 N.E.2d 907 (1994). However, the trial court held that Herington conflicted with Kotecki and its public policy to protect employers, and the court granted Gundersen the Kotecki limit on its contribution liability.
We reverse and remand.
On October 9, 1990, Gundersen and Stolt entered into a contract where Stolt agreed to pay $3,175 for Gundersen to provide the labor and equipment to waterblast a tank on Stolt's property to remove accumulated rust in the tank's interior. Stolt drafted the contract with the following provisions:
"7. If vendor performs services or constructs, errects [sic], inspects or delivers hereunder, Vendor agrees to indemnify and hold harmless Stolt Terminals (Chicago) Inc. from all loss or the payment of all sums of money by reason of all accidents, injuries, or damages to persons or property that may happen or occur in connection therewith.
8. Vendor represents and warrants that no Federal or State Statute or regulation, or municipal Ordinance, has been or will be violated in the manufacturing, sale, and delivery of any article or service sold and delivered hereunder, and if such violation has or does occur, Vendor shall indemnify and hold harmless Stolt Terminals (Chicago) Inc. from all loss, penalties, or the payment of all sums of money on account of such violation."
On October 17, 1990, Gundersen employee Arthur Farmer died while waterblasting Stolt's tank. Farmer's waterblasting gun sprang a leak, which caused a stream of high-pressure water to hit him in the neck, and Farmer fell from scaffolding erected in the tank.
On October 4, 1991, decedent's mother filed a complaint against Stolt, and decedent's seven brothers and sisters joined as plaintiffs in the fourth amended complaint filed on October 27, 1993. Count IV of that complaint alleged that Stolt had the right to supervise and control the activities of subcontractors, and that it failed to properly supervise and inspect the construction of the tank's scaffolding in violation of the Structural Work Act. The complaint's other counts were directed at defendants who were involved in the manufacture or sale of the waterblasting equipment.
On November 23, 1993, Stolt filed a third-party complaint against Gundersen. Counts I and II sought indemnity for all losses that were the proximate result of wrongful acts or breach of contract by Gundersen. Count III sought contribution to the extent that Gundersen's wrongful acts caused decedent's death.
On December 22, 1993, Gundersen moved to strike the ad damnum clause of count III *1196 of Stolt's complaint for its failure to limit Gundersen's contribution liability to Gundersen's workers' compensation liability, as dictated by Kotecki. The trial court granted the motion on September 6, 1994.
On September 16, 1994, Stolt moved for reconsideration of the order, relying on the August 1994 case of Herington. In Herington, the fifth district held that an employer's contractual agreement to indemnify for its own wrongful acts could waive the Kotecki contribution limit. Gundersen responded that (1) Herington was wrongfully decided, (2) paragraphs seven and eight of the contract sought indemnity rather than contribution and, thus, both violated the Construction Contract Indemnification for Negligence Act (Indemnity Act) (740 ILCS 35/1 (West 1994)), and (3) Gundersen could not have waived its Kotecki rights through a 1990 contract because Kotecki was decided in 1991. Gundersen also moved for summary judgment as to all three counts. On February 2, 1995, the trial court agreed with Gundersen's first rationale and denied the motion to reconsider, stating that it was not persuaded by the logic of Herington and felt constrained to follow Kotecki instead. Gundersen tendered its lien to the court on its worker's compensation payments, and the contribution count against it was dismissed with prejudice. The court also granted summary judgment to Gundersen as to counts I and II.
Stolt filed its notice of appeal on May 3, 1995. Stolt has only challenged the dismissal of its count III for unlimited contribution. Stolt concedes that even if counts I and II seeking indemnity could be construed as requesting contribution, they would be redundant and repetitive of count III. In this appeal, Stolt claims that (1) Herington properly decided that the Kotecki limit could be waived, (2) Herington properly concluded that contracts entered into before the Kotecki decision could affect the Kotecki limit, and (3) Stolt's contract with Gundersen called for contribution and did not violate the Indemnity Act.

I
The trial court felt that Herington was wrongfully decided because it violated public policy as established in Kotecki. We disagree. The fourth district recently followed Herington in Braye v. Archer-Daniels-Midland Co., 276 Ill.App.3d 1066, 213 Ill.Dec. 514, 659 N.E.2d 430 (1995), appeal allowed, 166 Ill.2d 536, 216 Ill.Dec. 1, 664 N.E.2d 638 (1996), which stated, "Like the court in Herington, we are similarly convinced that the Kotecki liability cap provided to employers in third-party contribution actions can be waived by contract." Braye, 276 Ill.App.3d at 1070, 213 Ill.Dec. 514, 659 N.E.2d 430. Herington and Braye both reasoned that if an employer can elect to waive its defense under the Workers' Compensation Act (820 ILCS 305/1 et. seq. (West 1992)) after a case is filed (see Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507, 514, 203 Ill.Dec. 454, 639 N.E.2d 1273 (1994); Doyle v. Rhodes, 101 Ill.2d 1, 10, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984)), an employer can bargain away the Act's protection as part of a contract. Braye, 276 Ill.App.3d at 1069, 213 Ill.Dec. 514, 659 N.E.2d 430; Herington, 266 Ill.App.3d at 496, 203 Ill.Dec. 348, 639 N.E.2d 907. Parties often adjust their legal rights and give up defenses by contract. Braye, 276 Ill.App.3d at 1069, 213 Ill.Dec. 514, 659 N.E.2d 430; Herington, 266 Ill.App.3d at 496, 203 Ill.Dec. 348, 639 N.E.2d 907. Other cases have allowed employers to bargain away portions of their protection under the Workers' Compensation Act (see Braye, 276 Ill.App.3d at 1069, 213 Ill.Dec. 514, 659 N.E.2d 430; Fredericks v. Liberty Mutual Insurance Co., 255 Ill.App.3d 1029, 1033-34, 194 Ill.Dec. 445, 627 N.E.2d 782 (1994)), and we see no public policy that would be harmed by allowing employers the option of bargaining away their Kotecki limit.
Gundersen first contends that the Herington rule "would deprive the employer of the certainty and security provided by liability limitation." However, if the employer has chosen to bargain away this advantage, it must be receiving a benefit greater than this "certainty and security." Gundersen also argues that Herington undermines the public policies supporting the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 et seq. (West 1994)) by allowing for contractual contribution. Nevertheless, the contract at issue *1197 does not call for contractual contribution but rather eliminates the Kotecki exception to the Contribution Act, putting the employer in the same position as other joint tortfeasors just as if it had not raised the workers' compensation liability defense. See Braye, 276 Ill.App.3d at 1069, 213 Ill.Dec. 514, 659 N.E.2d 430; Herington, 266 Ill.App.3d at 496, 203 Ill.Dec. 348, 639 N.E.2d 907. Thus, the contract did not "allow parties to create their own Contribution Act" as Gundersen contends; rather, the contract allowed the parties to fall completely under the rubric of the Contribution Act and its important public policy of contribution by culpable parties to the full extent of their share of fault. See Kotecki, 146 Ill.2d at 164, 166 Ill.Dec. 1, 585 N.E.2d 1023.
Lastly, Gundersen claims that our decision violates the public policy of the Contribution Act by precluding its ability to settle with the plaintiffs and be dismissed from the case, putting Gundersen in a worse position than other tortfeasors. See 740 ILCS 100/2(d) (West 1994). Gundersen is correct that it cannot settle with plaintiffs for its workers' compensation liability cap and escape any contribution claim when the cap is less than its "good-faith" share of total liability. See 740 ILCS 100/2(c) (West 1994). However, the contract does not preclude Gundersen from settling with Stolt and escaping all litigation in that manner. Our decision follows the Contribution Act's principle that a settlement with the party to whom you have unlimited liability will allow complete dismissal from the case. Gundersen elected to contractually waive its special protection as an employer and that enhanced settlement ability, but Gundersen's overall ability to settle has not been hampered in this matter substantially more than that of a normal defendant.

II
The next issue is whether a contract reached before the Kotecki decision could relax the Kotecki contribution limit. An enforceable contract must include a meeting of the minds or mutual assent to the terms of the contract. Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 30, 161 Ill.Dec. 335, 578 N.E.2d 981 (1991). Gundersen argues that "because neither party could have known the outcome of Kotecki, they could not have reached a meeting of the minds on whether the workers' compensation limitation on contribution liability established by it could be waived."
We disagree, as we conclude that the parties mutually agreed that there would be no limit on contribution liability regardless of the outcome of Kotecki, Before Kotecki, the question of whether there was a limit on employer contribution liability remained unanswered. Kotecki, 146 Ill.2d at 162, 166 Ill.Dec. 1, 585 N.E.2d 1023. For Kotecki, the supreme court granted leave to appeal in September 1989 (127 Ill.2d 618, 136 Ill.Dec. 588, 545 N.E.2d 112 (1989)), more than a year before the parties entered into the contract in this matter. Thus, both parties could have known that the supreme court was about to establish a default rule for employer contribution liability, and supreme court decisions generally apply retroactively to cases pending at the time the decision is announced. Lannom v. Kosco, 158 Ill.2d 535, 538, 199 Ill.Dec. 743, 634 N.E.2d 1097 (1994) (holding that Kotecki limit applied retroactively). The parties responded by mutually assenting in their contract to unlimited contribution, and Gundersen's assertion that the parties could not confront this issue without "clairvoyance" is meritless. Herington held that its employer could bargain away a potential contribution limit in the pre-Kotecki contract at issue in that case, and we follow Herington in concluding that the parties here mutually agreed that they wished their contract to allow unlimited employer contribution.
Gundersen relies on Braye to support its position. However, Braye fully agreed with the Herington decision involving that pre-Kotecki contract, as Braye stated that "we believe the [Herington] employer was liable for unlimited contribution." Braye, 276 Ill. App.3d at 1070, 213 Ill.Dec. 514, 659 N.E.2d 430. Although Braye did take issue with Herington's use of the term "waiver" as applied to a right to be firmly established in the future, this was merely a question of semantics. The relevant issue is that Braye *1198 agreed with the Herington decision, and thus Braye cannot support Gundersen's contention.

III
The final issue is whether the contractual terms in this matter called for contribution or for indemnity in violation of the Indemnity Act. The Indemnity Act states:
"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building structure, * * * every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 1994).
A court will not declare a contract illegal unless it expressly contravenes the law, as public policy itself strongly favors freedom to contract. Rome v. Upton, 271 Ill.App.3d 517, 520, 208 Ill.Dec. 163, 648 N.E.2d 1085 (1995); Holstein v. Grossman, 246 Ill.App.3d 719, 726, 186 Ill.Dec. 592, 616 N.E.2d 1224 (1993). The construction of a contract is a question of law to be resolved by the courts (Herington, 266 Ill.App.3d at 495, 203 Ill.Dec. 348, 639 N.E.2d 907), as is the question of whether a contract is enforceable under considerations of public policy. Rome, 271 Ill.App.3d at 520, 208 Ill.Dec. 163, 648 N.E.2d 1085.
We first conclude that paragraph seven allows for indemnity of Stolt's own negligence and therefore violates the Indemnity Act. Paragraph seven states:
"If Vendor performs services * * * Vendor agrees to indemnify and hold harmless Stolt * * * of all sums of money by reason of all accidents, injuries, or damages to persons or property that may happen or occur in connection therewith."
This language calls for full indemnity regardless of the relative fault of the parties, and, thus, paragraph seven is void under the Indemnity Act. Stolt could even be 100% at fault and still receive indemnity from Gundersen. There is nothing in this language that would prevent Gundersen from indemnifying Stolt for its own negligence or calls for distribution of loss according to relative culpability. Thus, paragraph seven is unenforceable and cannot serve to prevent the Kotecki contribution limit from operating. See Braye, 276 Ill.App.3d at 1071, 213 Ill. Dec. 514, 659 N.E.2d 430.
Stolt asserts that the contract cannot indemnify Stolt against its own negligence unless that intention is expressed in explicit and unequivocal terms, relying on Westinghouse Electric Elevator Co. v. La-Salle Monroe Building Corp., 395 Ill. 429, 433, 70 N.E.2d 604 (1946). Westinghouse adopted this rule prior to the Indemnity Act in recognition of the extraordinary liability assumed by an indemnitor who agrees to indemnify another for the other's negligence. Cox v. Lumbermens Mutual Casualty Co., 108 Ill.App.3d 643, 646, 64 Ill.Dec. 197, 439 N.E.2d 126 (1982). However, while the Westinghouse rule still applies to indemnity provisions not covered by the Indemnity Act, this court has repeatedly held that there is no longer any reason to apply the rule with construction contracts and it does not apply in such cases. See Shaheed v. Chicago Transit Authority, 137 Ill.App.3d 352, 364-65, 92 Ill.Dec. 27, 484 N.E.2d 542 (1985); Cox, 108 Ill.App.3d at 646, 64 Ill.Dec. 197, 439 N.E.2d 126. Stolt's reply brief acknowledges this point, but Stolt also contends that where there is no language purporting to indemnify for Stolt's own negligence, the contract cannot be so construed. Nevertheless, paragraph seven indemnifies Stolt for all damages regardless of fault or origin and, thus, such language necessarily includes indemnification for Stolt's own negligence. See GTE North, Inc. v. Henkels & McCoy, Inc., 245 Ill.App.3d 322, 184 Ill.Dec. 215, 612 N.E.2d 1375 (1993) (contract void where provision could require indemnity of other's negligence); Shaheed, 137 Ill.App.3d at 364-65, 92 Ill.Dec. 27, 484 N.E.2d 542 (contract provision void where could require indemnity of other's negligence). We also note that because the requests for indemnity in counts I and II did not preclude indemnification for damages that were partially due to Stolt's own negligence, summary judgment on those counts was properly granted.
Examining paragraph eight of the contract, we conclude that it does not *1199 expressly violate the Indemnity Act because its terms can reasonably be construed to preclude any indemnification of Stolt for its own negligence. A contract is properly found ambiguous when the language used is susceptible to more than one meaning (Meyer v. Marilyn Miglin, Inc., 273 Ill.App.3d 882, 888, 210 Ill.Dec. 257, 652 N.E.2d 1233 (1995)), and whether a contract is clear or ambiguous is a question of law for the court. Meyer, 273 Ill.App.3d at 888, 210 Ill.Dec. 257, 652 N.E.2d 1233. Paragraph eight states:
"Vendor represents and warrants that no Federal or State Statute * * * will be violated in the manufacturing, sale, and delivery of any article or service sold and delivered hereunder, and if such violation has or does occur, Vendor shall indemnify and hold harmless Stolt Terminals (Chicago) Inc., from all loss, penalties, or the payment of all sums of money on account of such violation."
The contract does not address whether the vendee could possibly be associated with the "manufacturing, sale, and delivery" of vendor's services and, thus, is ambiguous as to this issue. However, we believe that in ordinary meaning and under standard custom, a vendee will have no responsibility for the manufacturing, sale, and delivery of a vendor's services. Moreover, after comparing the restrictive nature of paragraph eight to the sweeping language of paragraph seven, we conclude that the phrase "manufacturing, sale and delivery" was likely meant to specifically limit all focus to vendor's conduct. See Wilson v. Wilson, 217 Ill.App.3d 844, 160 Ill.Dec. 752, 577 N.E.2d 1323 (1991) (each part of contract must be reviewed in light of others). Assuming that "manufacturing, sale, and delivery" restricts the paragraph's application to vendor's actions and statutory violations, the phrase "on account of such violation" further restricts liability to only those losses caused by vendor's violations, thus preventing any possibility of Stolt being indemnified for its own actions. Because we find such an interpretation reasonable under this contract, the contract does not expressly violate the Indemnity Act as the contract's restrictions can preclude Stolt from any indemnification for its own negligence. Therefore, paragraph eight acts to waive the Kotecki limit and allows Stolt to seek contribution from Gundersen according to its terms, and we remand for a determination of Gundersen's culpability and whether Stolt can establish violations within the terms of paragraph eight.
Gundersen first contends that by using the term "indemnity," the plain meaning of the contract's language calls for indemnity for all losses and not contribution. However, Herington strongly supports our decision, as the language in its contract was almost identical to that of paragraph eight:
"`Subcontractor hereby assumes the entire liability for its own negligence * * * Subcontractor agrees to indemnify and save harmless Contractor and its agents, servants and employees, from and against all loss, expense, damage or injury, including legal fees, that Contractor may sustain as a result of any claims predicated or [sic] said allegations of Subcontractor's own negligence or on Subcontractor's alleged violation of the Structural Work Act as above set forth.'" Herington, 266 Ill. App.3d at 491, 203 Ill.Dec. 348, 639 N.E.2d 907.
Herington concluded that its contract called for contribution because the contract allowed recovery according to the parties' relative culpability. See also Stevens v. Silver Manufacturing Co., 70 Ill.2d 41, 46, 15 Ill.Dec. 847, 374 N.E.2d 455 (1977) (prayer for "partial indemnity" against employer construed as a contribution claim). The legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains. Herington, 266 Ill.App.3d at 494, 203 Ill.Dec. 348, 639 N.E.2d 907. As in Herington, the contract at issue demanded full indemnity for losses "on account of" the employer's actions, and, thus, the contract's legal effect was a call for contribution.
Gundersen next calls on us to construe the contract against Stolt because contracts are construed against the drafter if ambiguity is present. Signal Capital Corp. v. Lake Shore National Bank, 273 Ill.App.3d 761, 772, 210 Ill.Dec. 388, 652 N.E.2d 1364 (1995). However, to violate public policy, a contract must expressly contravene public *1200 policy. Rome, 271 Ill.App.3d at 520, 208 Ill.Dec. 163, 648 N.E.2d 1085; Holstein, 246 Ill.App.3d at 726, 186 Ill.Dec. 592, 616 N.E.2d 1224. Once we determine that a contract is ambiguous relative to the public policy at issue, the contract already does not expressly violate public policy and further construction is unnecessary and irrelevant.
Gundersen also relies on Braye, where the court held that its contract was void because it called for indemnity. The contract in Braye stated, "`except to the extent that any such injury or damage is due solely and directly to [ADM's] or its customer's negligence, as the case may be, [All Trill] shall pay [ADM] for all loss which may result in any way from any act or omission of [All Tri-R] * * *.'" Braye, 276 Ill.App.3d at 1067, 213 Ill.Dec. 514, 659 N.E.2d 430. Because this contract required the employer, All Tri-R, to pay 100% of the costs even if ADM had been 99% at fault, the court properly found that the contract would allow indemnity of ADM's own negligence. See Braye, 276 Ill.App.3d at 1071, 213 Ill.Dec. 514, 659 N.E.2d 430. However, in the instant matter, the contract contains no such language shifting all loss to Gundersen in the event it is negligent as well as Stolt. Instead, the contract requires payment by Gundersen of losses incurred "on account of Gundersen's violation, language requiring Gundersen to pay according to its responsibility and preventing any indemnity of Stolt's own negligence.
Further, Gundersen argues that even a valid contribution provision violates the Indemnity Act if applied within the context of the Structural Work Act, relying on Pettie v. Williams Brothers Construction, Inc., 225 Ill.App.3d 1009, 168 Ill.Dec. 55, 589 N.E.2d 169 (1992). However, Pettie found a violation only because its party argued that contractual contribution should apply as a separate entity from the Contribution Act, and a possible waiver of the Kotecki limit was not even addressed by the court. See Pettie, 225 Ill.App.3d at 1017, 168 Ill.Dec. 55, 589 N.E.2d 169; Herington, 266 Ill.App.3d at 494-95, 203 Ill.Dec. 348, 639 N.E.2d 907 (waiver of Kotecki limit was not a claim for contractual contribution). We also note that the Pettie contract was very close to the contract at issue in this matter, and Pettie's conclusion that its agreement did not expressly violate the Indemnity Act lends further support to our conclusion in this case. See Pettie, 225 Ill.App.3d at 1016-17, 168 Ill.Dec. 55, 589 N.E.2d 169 ("the indemnification agreement, as it purports to indemnify [contractor] for liability arising exclusively from [subcontractor's] performance, would not, on its face, run afoul of the Indemnity Act"). Lastly, Gundersen cites several decisions of this court that predated Kotecki but these are irrelevant to this matter and its bargaining away of the Kotecki contribution limit.
While we remand because paragraph eight could allow for unlimited contribution, we express no opinion on whether Stolt will be able to establish the contract's requirements that a statutory violation occurred in the manufacture, sale, or delivery of Gundersen's services. The trial court has not yet confronted this issue, and, thus, we lack the data to make such a determination in this appeal.
For the foregoing reasons, the order of the trial court dismissing count III is reversed and set aside, and the cause is remanded for further proceedings in accordance herewith.
Reversed and remanded.
GORDON and HOURIHANE, JJ., concur.