MARION HOSPITAL CORPORATION, d/b/a Heartland Regional Medical Center, Plaintiff-Appellant, v. STERLING EMERGENCY SERVICES OF ILLINOIS, INC., d/b/a Sterling Healthcare, Defendant-Appellee.

Fifth District   No. 5—07—0703

Opinion filed July 23, 2009.—Rehearing denied August 21, 2009.

Richard J. Behr and Timothy J. Reichardt, both of Behr, McCarter & Potter, P.C., of St. Louis, Missouri, for appellant.

Daniel W. Farroll and Christian Willenborg, both of Hepler, Broom, MacDonald, Hebrank, True & Noce, LLC, of Edwardsville, and Charles H. Cole and Richard J. Juarez, both of Schuyler Roche, P.C., of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The plaintiff filed a complaint against the defendant in the circuit court of Madison County requesting reimbursement for sums paid in the settlement of a separate suit filed in the circuit court of Williamson County. On the motion of the defendant, the circuit court dismissed the complaint. On appeal, the issue is whether the plaintiff's claim is barred by the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2006)). We reverse and remand.

## FACTS

On March 1, 1999, Marion Memorial Hospital and ECS of Illinois, Inc. (ECS), entered into an "Emergency Services Agreement" (Agreement). Under the Agreement, ECS became the sole and exclusive provider of emergency medical services through independent contractor physicians at Marion Memorial Hospital. The Agreement contained the following relevant provisions:

"SECTION 9. *INDEPENDENT CONTRACTOR*

Contractor and its Physician Associates, contractors, or agents perform the services and duties required hereunder as independent contractors and not as employees, agents, [or] partners of or joint venturers with Hospital. ECS shall provide each of its Physician Associates with a name badge identifying their affiliation with ECS.

SECTION 10. *INSURANCE AND INDEMNIFICATION*
Contractor and Physician Associates will maintain medical malpractice insurance in the minimum amount of $1,000,000 for each medical claim and $3,000,000 annually for the aggregate of all claims. Upon request, Contractor will provide the Hospital with a Certificate(s) of Insurance as evidence that this coverage has been obtained. In addition, such policy will provide for at least fifteen (15) days' written notice to Hospital before any material alteration, cancellation[,] or nonrenewal is to take effect.

In the event Contractor fails to obtain or maintain the insurance required hereunder, Hospital[,] at its option, may immediately terminate this Agreement. The ninety (90) day written notice will be waived in such an event.

Contractor hereby indemnifies and hold [*sic*] Hospital harmless from and against any and all liability, losses, damages, claims[,] or causes or [*sic*] action and expenses connected therewith (including reasonable attorneys' fees) caused, or asserted to have been caused, directly or indirectly, by or as a result of negligent acts during the performance of Contractor's duties hereunder or those of its agents, employees, servants, officers[,] or assigns.

Nothing in this Section shall relieve the Hospital from liability proximately caused by the employees of the Hospital in the normal course of their duties. Upon termination of this Agreement for any reason whatsoever, Contractor agrees that it will purchase an extended reporting endorsement ('tail') coverage for a period of not less than three (3) years from the final dates of service hereunder."

On July 26, 2002, the parties amended the contractual terms for termination with cause.

Marion Memorial Hospital later became known as Marion Hospital Corp., doing business as Heartland Regional Medical Center. Marion Hospital Corp. alleges that Sterling Emergency Services of Illinois, Inc., doing business as Sterling Healthcare (Sterling), purchased the assets of ECS pursuant to bankruptcy proceedings in February 2004.

In June 2003, Tony Maze filed suit in the circuit court of Williamson County. Maze named as defendants Jenice Clark, a licensed physician assistant, and Heartland Regional Medical Center, a subsidiary of Marion Hospital Corp. of Brentwood, Tennessee (Marion Hospital).

Counts IV and V were directed against Marion Hospital. In count IV, Maze alleged that on February 13, 2003, the decedent went to Marion Hospital's emergency room complaining of shortness of breath. In the emergency room, the decedent was treated by Clark. After his discharge, the decedent collapsed at home and died. Maze alleged that Clark negligently failed to properly test or diagnose the decedent or consult with the attending emergency room physician. Count IV al-

leged that Clark was an apparent employee or agent of Marion Hospital and that the decedent acted in a manner of trust and reliance on Clark's apparent status as an agent of Marion Hospital.

Count V alleged direct negligence on the part of Marion Hospital, stating that Marion Hospital failed to note vital signs, failed to communicate accurate discharge vital signs, and failed to orient Clark to proper protocol.

On April 18, 2006, Maze and Marion Hospital submitted a "Full and Final Release of Marion Hospital Corporation d/b/a Heartland Regional Medical Center." The release addressed Marion Hospital's "liability as a result of its own direct negligence and as a result of vicarious liability as principal of the apparent agent, Jenice Clark, PA-C." The release stated that $180,000 had been offered to Maze in full and final settlement of any and all claims against Marion Hospital for alleged direct negligence and alleged vicarious liability, but it specifically acknowledged that the release did not operate as a settlement of Maze's direct negligence claim against Clark. The release stated as follows:

"The undersigned and Releasees specifically agree and acknowledge that one-half ($^1$/2) of the above-referenced settlement amount or Ninety Thousand Dollars ($90,000.00) is attributable to and paid in settlement of [Maze's] direct negligence claim against [Marion Hospital] and one-half ($^1$/2) of the above-referenced settlement amount or Ninety Thousand Dollars ($90,000.00) is attributable to and paid in settlement of [Maze's] vicarious liability/agency claim against [Marion Hospital]. The undersigned and [Marion Hospital] further agree and acknowledge that [Marion Hospital's] payment of the Ninety Thousand Dollars ($90,000.00) attributable to the vicarious liability/agency claim arose as a result of the alleged negligent acts or omissions of Jenice Clark, PA-C[,] as agent and employee of ECS of Illinois, Inc.

The undersigned and Releasees do hereby declare that the terms of this settlement are a result of bargaining at arms length in good faith and that this settlement was entered into pursuant to and in satisfaction of Illinois' [sic] 'Contribution Among Joint Tortfeasors Act [sic].' "

On May 8, 2006, the circuit court held a hearing on the joint motion for a finding of a good-faith settlement, and it approved the settlement as being in good faith pursuant to the Contribution Act.

On July 6, 2006, Maze entered into an agreement to release and discharge Clark, Emergency Care Specialists, PhyAmerica Physicians Groups, Inc., and Western Litigation Specialists, Inc., for the sum of $120,000.

On January 31, 2007, Marion Hospital filed suit against Sterling in the circuit court of Madison County. On May 11, 2007, Marion Hospital filed its second amended complaint requesting indemnification from Sterling in the amount of $90,000, alleging a breach of contract.

On July 20, 2007, the court granted Sterling's motion to dismiss the second amended complaint. The court found as follows:

"Case called for hearing on the [m]otion to [d]ismiss of [d]efendant, [Sterling]. After being duly advised in the premises, the court hereby finds that the claim alleged by [Marion Hospital] is actually a claim seeking contribution even though [Marion Hospital] has chosen to label the claim 'express indemnity.' Because [Marion Hospital's] claim as alleged is seeking recovery for only the portion of the total settlement that is attributed by the settling parties to the alleged fault of [Sterling], it is to be considered as a claim for contribution. Illinois law does not allow a claim for contribution as is alleged here. The motion to dismiss is hereby granted. [Marion Hospital] is given leave to file an amended complaint within 30 days."

On August 16, 2007, Marion Hospital filed a third amended complaint. Sterling moved to dismiss. On November 16, 2007, the court dismissed the cause with prejudice "on the basis that [Marion Hospital] is seeking contribution and/or partial indemnity." The court stated that the order was final and appealable. Marion Hospital appeals.

## ANALYSIS

■ The Contribution Act provides as follows:

"(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement.

(f) Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor[ ] is subrogated to the tortfeasor's right of

contribution. This provision does not affect any right of contribution nor any right of subrogation arising from any other relationship." 740 ILCS 100/2(c), (d), (e), (f) (West 2006).

At issue is whether the relief sought by Marion Hospital is contribution or indemnity. The trial court found that Marion Hospital was seeking contribution, and the court dismissed the complaint as barred by the Contribution Act. The trial court erred.

■ Contribution and indemnity are separate and distinct theories of recovery. *Kerschner v. Weiss & Co.*, 282 Ill. App. 3d 497, 502, 667 N.E.2d 1351, 1355 (1996). The two theories are based on fundamentally different premises and constitute mutually exclusive avenues for an allocation of damages between defendants. *Hahn v. Norfolk & Western Ry. Co.*, 241 Ill. App. 3d 97, 102, 608 N.E.2d 683, 687 (1993). Contribution may not be sought where a party has a right to indemnity. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 316, 821 N.E.2d 269, 276 (2004).

Contribution is a statutory remedy. *Cosey v. Metro-East Sanitary District*, 221 Ill. App. 3d 205, 209, 581 N.E.2d 914, 917 (1991). The Contribution Act provides a right of contribution among two or more parties that are subject to liability in tort arising from the same injury. 740 ILCS 100/2(a) (West 2006); *Cosey*, 221 Ill. App. 3d at 209, 581 N.E.2d at 917. The Contribution Act provides a mechanism whereby the relative rights of multiple defendants may be sorted out after a plaintiff has collected from among responsible defendants. *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 346 Ill. App. 3d 300, 306, 804 N.E.2d 707, 712 (2004), *aff'd*, 214 Ill. 2d 356, 827 N.E.2d 435 (2005). The Contribution Act allows a tortfeasor to seek contribution if it has paid more than its *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 2006). By this procedure, the Contribution Act distributes the responsibility for payment in a proportional amount relative to fault among all the tortfeasors. *BHI Corp.*, 346 Ill. App. 3d at 306, 804 N.E.2d at 712; *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489, 494, 639 N.E.2d 907, 910-11 (1994).

Indemnity is based in common law and contract doctrine. *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 352, 609 N.E.2d 285, 288 (1992); *Kerschner*, 282 Ill. App. 3d at 502, 667 N.E.2d at 1355. Indemnity, in general terms, is an obligation on one party to make good a loss or damage incurred by another. *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 472, 893 N.E.2d 583, 590 (2008). Indemnity requires a showing that there was a pretort relationship. *Richardson v. Chapman*, 175 Ill. 2d 98, 119, 676 N.E.2d 621, 631 (1997); *Coleman v. Franklin Boulevard Hospital*, 227 Ill. App. 3d 904, 908, 592 N.E.2d 327, 329 (1992).

Indemnity shifts the entire responsibility for payment from a party who has been compelled to pay to another that is actually at fault. *Zielinski v. Miller*, 277 Ill. App. 3d 735, 739, 660 N.E.2d 1289, 1293 (1995); *Kerschner*, 282 Ill. App. 3d at 502, 667 N.E.2d at 1355.

Indemnity may be either expressed in a contractual provision or implied from the relationship between tortfeasors. *Travelers Casualty & Surety Co.*, 229 Ill. 2d at 472, 893 N.E.2d at 590. Both express indemnity and implied indemnity are readily distinguished from contribution.

The Illinois Supreme Court clarified the distinction between implied indemnity and contribution. *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center*, 154 Ill. 2d 347, 348, 609 N.E.2d 285, 286 (1992). *American National Bank & Trust Co.* involved a suit for medical malpractice where a medical center filed a two-count counterclaim against anesthesiologists for contribution and, alternatively, for indemnification for claims of vicarious liability. After the anesthesiologists settled with the plaintiffs, the circuit court dismissed the medical center's counterclaim as being in violation of the Contribution Act. The supreme court reversed. *American National Bank & Trust Co.*, 154 Ill. 2d at 355, 609 N.E.2d at 290.

*American National Bank & Trust Co.* discussed how implied indemnity had evolved from two different theories. One branch of implied indemnity derived from tort principles. This branch of implied indemnity was based on the rationale that equity should prevent the injustice of allowing an active tortfeasor to escape liability at the choice of the plaintiff. *American National Bank & Trust Co.*, 154 Ill. 2d at 351, 609 N.E.2d at 287; see also *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 27, 495 N.E.2d 496, 497 (1986) (no indemnity because of direct liability under the Structural Work Act); *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 261, 527 N.E.2d 1248, 1255 (1988) (a claim by a distributor for indemnity failed because it was directly negligent). The court stated, unequivocally, that the Contribution Act eliminated any claim of "implied indemnity based on tort principles of relative blameworthiness." *American National Bank & Trust Co.*, 154 Ill. 2d at 351, 609 N.E.2d at 288.

*American National Bank & Trust Co.* held that implied indemnity for vicarious liability was not affected by the Contribution Act. The court noted that a separate branch of implied indemnity developed from a quasi-contractual context. *American National Bank & Trust Co.*, 154 Ill. 2d at 351, 609 N.E.2d at 288. This form of implied indemnity recognized that vicarious liability may impose liability on a blameless party based on the conduct of another. The court concluded, "[R]eason may exist to continue to recognize the viability of implied

indemnity where a principal is vicariously liable for the conduct of an agent or for the nondelegable acts of an independent contractor." *American National Bank & Trust Co.*, 154 Ill. 2d at 351, 609 N.E.2d at 288.

The court discussed the viability of implied indemnity in instances of vicarious liability. *American National Bank & Trust Co.* noted that the right to contribution under the Contribution Act was based on a party's " 'relative culpability,' " which equated to its " 'pro rata share.' " *American National Bank & Trust Co.*, 154 Ill. 2d at 353, 609 N.E.2d at 289, quoting Ill. Rev. Stat. 1985, ch. 70, par. 303; see also K. Kandaras & P. Kelley, *New Developments in the Illinois Law of Contribution Among Joint Tortfeasors*, 23 Loy. U. Chi. L.J. 407, 448 (1992). In contrast, in cases of vicarious liability, the *"pro rata* shares" of the indemnitor and the indemnitee are not distinct and are not derived from tort principles of culpability and fault. *American National Bank & Trust Co.*, 154 Ill. 2d at 353, 609 N.E.2d at 289. Implied indemnity for vicarious liability was, therefore, found to be outside the statutory scheme of the Contribution Act:

> "The statutory contribution scheme is premised on fault-based considerations. As such, it is theoretically 'ill-suited to the task of addressing' quasi-contractual relationships. (23 Loy. U. Chi. L.J. at 448.) In cases of vicarious liability, there is only a basis for indemnity, not for apportionment of damages as between the principal and agent *(Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, 198, [488 N.E.2d 332, 338,] citing W. Keeton, Prosser & Keeton on Torts §52, at 346 (5th ed. 1984)). Only the agent is at fault in fact for the plaintiff's injuries. (See *Bristow,* 140 Ill. App. 3d at 198[, 488 N.E.2d at 338].) The viability of implied indemnity in the quasi-contractual situation insures that a blameless principal cannot be found legally accountable. We therefore hold that common law implied indemnity was not abolished by the Contribution Act in quasi-contractual relationships involving vicarious liability." *American National Bank & Trust Co.*, 154 Ill. 2d at 353-54, 609 N.E.2d at 289.

Marion Hospital argues that it has alleged a claim for express indemnity. An indemnity agreement is a contractual obligation whereby the indemnitor agrees to protect an indemnitee from claims asserted against the indemnitee by a third person. See *Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173, 185, 601 N.E.2d 907, 915 (1992). Indemnity agreements are contracts and should be construed as any other contracts. *Duffield v. Marra, Inc.*, 166 Ill. App. 3d 754, 764, 520 N.E.2d 938, 945 (1988); see *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 925, 585 N.E.2d 1304, 1310 (1992). As a contractual obligation, and not a matter of comparative fault,

express agreements are outside the Contribution Act. See *Roberson v. Belleville Anesthesia Associates, Ltd.*, 213 Ill. App. 3d 47, 51, 571 N.E.2d 1131, 1133-34 (1991) (in context of a statute of limitations, "[a]ctions for express indemnity are not affected by the Contribution Act").

If the case at hand had involved solely a claim against Marion Hospital for vicarious liability for the conduct of Clark and a corresponding claim by Marion Hospital for indemnity from Sterling, no further discussion would be necessary. Marion Hospital and Sterling were free to contract for Sterling to indemnify Marion Hospital for any claims arising from the actions of Sterling's employees. Indeed, the agreement provides that Sterling would indemnify Marion Hospital for all the damages caused as a result of the negligent acts of Sterling's agents and employees. Confusion arises from Marion Hospital's assertion that Sterling is responsible for only a portion of Marion Hospital's payment to Maze.

■ Illinois does not recognize "partial indemnity." *Herington v. J.S. Alberici Construction Co.*, 266 Ill. App. 3d 489, 493, 639 N.E.2d 907, 910 (1994). Illinois courts interpret contractual provisions calling for partial indemnity as attempts at contribution. *Herington*, 266 Ill. App. 3d at 494, 639 N.E.2d at 911; *Stevens v. Silver Manufacturing Co.*, 70 Ill. 2d 41, 46, 374 N.E.2d 455, 457 (1977); *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1006, 830 N.E.2d 636, 642 (2005); *Liccardi v. Stolt Terminals (Chicago), Inc.*, 283 Ill. App. 3d 141, 150, 669 N.E.2d 1192, 1199 (1996), *aff'd on other grounds*, 178 Ill. 2d 540, 687 N.E.2d 968 (1997). A claim for contractual contribution must conform to the requirements of the Contribution Act. *Herington*, 266 Ill. App. 3d at 494, 639 N.E.2d at 911.

The trial court incorrectly found that Marion Hospital was seeking partial indemnity. The trial court found that Marion Hospital was seeking contribution because Marion Hospital was seeking recovery for only the portion of the total settlement that is attributed by the settling parties to the alleged fault of Sterling. Sterling contends that Marion Hospital, having paid a portion of the settlement, is barred from a genuine indemnity claim and is not seeking full indemnity but, rather, a proportionate share.

Sterling relies on the analogy underlying *Herington*—"[t]here is a difference between paying for a piece of apple pie and paying for the entire pie." *Herington*, 266 Ill. App. 3d at 493, 639 N.E.2d at 910. In *Herington*, construction workers employed by a subcontractor providing painting services filed a lawsuit alleging common law negligence and a violation of the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992)). The general contractor filed a third-party action against

the subcontractor. The general contractor sought both contribution under the Contribution Act and indemnification " 'in such an amount as is attributable to [the subcontractor's] share of the liability.' " *Herington*, 266 Ill. App. 3d at 490, 639 N.E.2d at 908. This claim was based on the terms of a contract between the general contractor and the subcontractor which provided that the subcontractor would assume the entire liability for its own employees and for any violation arising from the Structural Work Act.

*Herington* involved the Structural Work Act, the Contribution Act, and the Construction Contract Indemnification for Negligence Act (anti-indemnity statute) (740 ILCS 35/0.01 *et seq.* (West 1992)). The anti-indemnity statute provides that for certain construction contracts an agreement to indemnify "another person from that person's own negligence is void as against public policy." 740 ILCS 35/1 (West 1992). The general contractor contended that the contract was outside the scope of the anti-indemnity statute because it was seeking indemnification "only for that portion of the liability attributable to [the subcontractor's] own negligence or violation of the Structural Work Act." *Herington*, 266 Ill. App. 3d at 493, 639 N.E.2d at 910; 740 ILCS 35/1 (West 1992). The court rejected that argument:

"We disagree because Alberici's argument and the *Dixon* decision proceed from a false premise. There is a difference between paying for a piece of apple pie and paying for the entire pie.

'There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead.' W. Prosser, Torts §51, at 310 (4th ed. 1971).

Where Alberici and *Dixon* go astray is in concluding that such a thing as 'partial indemnity' exists. It does not. Our supreme court clearly delineated the difference between contribution and indemnity in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 7, 374 N.E.2d 437, 439, and quoted Professor Prosser on this distinction. (See also *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, 46, 374 N.E.2d 455, 457 (where a prayer for 'partial indemnity' was construed as a contribution claim).) The legal effect to be given an instrument is not determined by the label it bears or the technical terms it contains. *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.

In sum, to the extent that Alberici seeks reimbursement from Shield based upon paragraph 8(c) of the subcontract and describes the prayer as one for 'partial indemnity,' we conclude that what is really requested is contribution. *Stevens*, 70 Ill. 2d 41, 374 N.E.2d 455." *Herington*, 266 Ill. App. 3d at 493-94, 639 N.E.2d at 910-11.

*Herington* ruled that the anti-indemnity statute was not violated because the general contractor's claim was for contribution, not indemnity, but that contractual contribution violated the Contribution Act.

Unlike *Herington*, Marion Hospital is not seeking contractual contribution. The relative position of the parties and the involvement of the Structural Work Act are indicators of the fundamental difference between *Herington* and the case at hand. The plaintiffs in *Herington* were injured employees. *Herington* involved an apportionment of liability for direct negligence and statutory violations of the workplace environment in a suit brought by the employees. Both routes of liability in *Herington* involved the comparative fault of the general contractor and the subcontractor. See *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 35, 495 N.E.2d 496, 501 (1986) (liability under the Structural Work Act is imposed only where a defendant is actually at fault). Similarly, in other claims for "partial indemnity" the relative positions of the parties gave rise to issues of apportionment of fault. The disbursement of damage payments was based on relative culpability and not vicarious liability. See *Stevens v. Silver Manufacturing Co.*, 70 Ill. 2d 41, 46, 374 N.E.2d 455, 457 (1977) ("Although stated in terms of partial indemnity rather than contribution, the prayer for relief clearly seeks contribution based on relative degree to which the employer's misuse of the product or assumption of the risk contributed to cause plaintiff's injuries"); *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1006, 830 N.E.2d 636, 641-42 (2005) (citing *Herington* and *Liccardi* for purposes of a contractual waiver of the *Kotecki* damage cap (*Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991))); *Liccardi v. Stolt Terminals (Chicago), Inc.*, 283 Ill. App. 3d 141, 150, 669 N.E.2d 1192, 1199 (1996) (the contract called for recovery based on the relative culpability of the parties), *aff'd on other grounds*, 178 Ill. 2d 540, 687 N.E.2d 968 (1997); see also *Hahn v. Norfolk & Western Ry. Co.*, 241 Ill. App. 3d 97, 103, 608 N.E.2d 683, 688 (1993) (the lack of a judgment of fault was irrelevant because the claim for reimbursement was based on relative culpability).

■ In contrast, the indemnity sought by Marion Hospital is based solely on vicarious liability. The prohibited claims of partial indemnity were based on the fundamental principle of contribution—*pro rata* apportionment of liability among culpable parties. *Herington*, 266 Ill. App. 3d at 493, 639 N.E.2d at 910; see *American National Bank & Trust Co.*, 154 Ill. 2d at 353, 609 N.E.2d at 289. Vicarious liability is based on principles of indemnity, not apportionment of fault. *American National Bank & Trust Co.*, 154 Ill. 2d at 353-54, 609 N.E.2d at 289.

The sharing of the theoretical underpinnings of vicarious liability and indemnity has practical effects. Because vicarious liability and indemnity are based on the same foundation, indemnity should be available when " 'liability is vicariously imposed by policy of law rather than culpability of conduct.' " *Travelers Casualty & Surety Co.*, 229 Ill. 2d at 472, 893 N.E.2d at 590, quoting *Allison*, 113 Ill. 2d at 35, 495 N.E.2d at 501.

The trial court, in effect, found that Marion Hospital's payment for its own direct negligence precluded any claim for indemnity for that portion of damages attributable to vicarious liability. The payment of damages for direct negligence, however, did not sever the theoretical ties between the claim for indemnity and the allegation of vicarious liability. Both the complaint and the settlement agreement distinctly put vicarious liability and direct negligence in separate categories. Marion Hospital is seeking payment for the pie attributable to Clark's conduct. This court finds no reason Marion Hospital's payment for a *pro rata* share of its own direct negligence should prevent it from seeking indemnity from Sterling for the vicarious liability stemming from the conduct of Clark.

Unfortunately, our resolution of this issue on appeal does not conclude the litigation. On appeal, Sterling alludes to other issues regarding the authority of Marion Hospital to obtain the release and the adequacy of the procedures in the underlying settlement. These issues were not the basis for the dismissal by the trial court and are thus not addressed in this decision. See *Laue v. Leifheit*, 105 Ill. 2d 191, 197, 473 N.E.2d 939, 942 (1984); *Johnson v. United Airlines*, 203 Ill. 2d 121, 129, 784 N.E.2d 812, 818 (2003).

Accordingly, the order of the circuit court of Madison County is hereby reversed, and the cause is remanded.

Reversed; cause remanded.

SPOMER and WELCH, JJ., concur.